JONES DAY
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Michael J. Templeton (MT 8709)
Ross S. Barr (RB 3685)

    and

77 West Wacker
Chicago, IL 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Mark A. Cody (*pro hac vice*)
Robert E. Krebs (*pro hac vice*)

Counsel to South Carolina Electric & Gas Company

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | )    Chapter 11 |
| | ) |
| Calpine Corporation, <u>et al.</u>, | )    Case No. 05-60200 (BRL) |
| | )    (Jointly Administered) |
|                     Debtors. | ) |
| _____ | ) |
| | ) |
| Columbia Energy LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Adv. Pro. No. 07-1694 |
| | ) |
| South Carolina Electric & Gas Company | ) |
| | ) |
| Defendant. | ) |
| _____ | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**SOUTH CAROLINA ELECTRIC & GAS COMPANY TO**
<u>**WITHDRAW REFERENCE OF ADVERSARY PROCEEDING**</u>

       Defendant South Carolina Electric & Gas Company ("SCE&G") hereby submits

this memorandum of law (the "Memorandum") in support of its motion (the "Motion"), pursuant

to section 157(d) of Title 28 of the United States Code (the "Judicial Code"), Rule 5011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 5011.1 of the Local Rules of Bankruptcy Procedure for the Southern District of New York (the "Local Rules"), for the entry of an order withdrawing the reference to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of the adversary proceeding captioned Columbia Energy LLC v. South Carolina Electric & Gas Company, Adv. Proc. No. 07-1694 (the "Adversary Proceeding").  As set forth in this Memorandum, the adjudication of the Adversary Proceeding will require the consideration and resolution of substantial and material issues of non-title 11 federal law under (a) the Federal Power Act, 16 U.S.C. §§ 791a, et. seq. (the "FPA"), (b) certain orders and directives issued by the Federal Energy Regulatory Commission (the "FERC"), and (c) FERC-regulated agreements between the parties.  As a result, withdrawal of the reference of the Adversary Proceeding is mandatory under section 157(d) of the Judicial Code.  In further support of the Motion, SCE&G submits the Declaration of Henry E. Delk, Jr. (the "Delk Declaration") and the Declaration of Michael J. Templeton (the "Templeton Declaration"), filed contemporaneously herewith, and respectfully represents as follows:

## BACKGROUND

**I.     The Ongoing FERC Proceedings Regarding
        SCE&G's Application of Transmission Credits**

On May 8, 2001, SCE&G and Plaintiff Columbia Energy LLC ("Columbia") entered into the Construction and Maintenance Agreement for Interconnection Facilities (the "C&M Agreement").  The C&M Agreement sets forth the terms and conditions of the interconnection of Columbia's electric generation facilities to SCE&G's electric transmission system.  SCE&G entered into separate agreements with Columbia's marketing affiliate, Calpine

2

Energy Services, L.P. ("CES"), for the transmission of power from Columbia's generation facilities on SCE&G's transmission system (the "Transmission Agreements").

As required under section 205 of the FPA, on September 29, 2003, SCE&G filed the C&M Agreement with FERC. On October 20, 2003, Columbia filed a motion to intervene and protest in response to SCE&G's filing. In its protest, Columbia requested under FPA section 206 that FERC determine that the allocation of costs in the C&M Agreement were unjust and unreasonable in contravention of the FPA. Columbia further requested that FERC find that certain electric transmission facilities, referred to as the "Narrow U Facilities" or "U Facilities," were not "direct assignment facilities," i.e., transmission facilities necessary to physically and electrically interconnect Columbia's generation facilities to SCE&G's transmission system (such that the facilities' cost should be directly assigned to Columbia), but rather that the "Narrow U Facilities" constituted "network upgrades" subject to the FERC policy requiring SCE&G to issue transmission credits up to the level of the facilities' cost. Columbia's protest requested that finding, notwithstanding the fact that, in the C&M Agreement, Columbia had agreed to the classification of such facilities as direct assignment facilities without any provision for the issuance of transmission credits.

By order issued March 22, 2004 (the "March 2004 Order"), FERC determined that the "Narrow U Facilities" are "network upgrades and their cost must be repaid over time to Columbia by SCE&G by granting Columbia credits against the transmission rates paid by Columbia to SCE&G."[1] Pursuant to that order, SCE&G filed a revised version of the C&M Agreement that added Section 7.2.1 to provide for such credits.

---

[1]    South Carolina Electric & Gas Company, 106 FERC ¶ 61,265 (2004) ("March 2004 Order"), *reh'g denied*, 118 FERC ¶ 61,185 (2007) *appeal filed*, 4th Cir. (May 7, 2007) A copy of the March 2004 Order is attached as Exhibit A to the Delk Declaration.

3

Pursuant to the March 2004 Order and the revised C&M Agreement, in June 2004, SCE&G began applying credits to CES' monthly invoices for charges incurred for transmission service from Columbia's generating facilities.  SCE&G applied these transmission credits in this manner with the full knowledge of both Columbia and CES, and neither challenged this crediting practice until over two years later – after the entities had filed voluntary petitions commencing their respective reorganization cases under chapter 11 of the Bankruptcy Code *and the credits had been fully applied*.  At no time while SCE&G applied these transmission credits to each monthly invoice in compliance with the March 2004 Order did Columbia or CES suggest to SCE&G that CES was paying too little for transmission service – i.e., that SCE&G should cease its application of substantial credits to CES' transmission invoices.

By order issued March 7, 2007 (the "March 2007 Order"), FERC directed SCE&G to make certain modifications to section 7.2.1 of the C&M Agreement and "to file, within 30 days of the date of [the March 2007 Order], revised [agreements] reflecting the modifications discussed in the body of [the March 2007 Order]."[2]

On April 6, 2007, SCE&G submitted a filing to FERC in response to FERC's directives set forth in the March 2007 Order (the "Compliance Filing").[3]  In the Compliance Filing, SCE&G notified FERC of its position that it had fully complied with FERC's directive to issue transmission credits by crediting CES' transmission charges under the Transmission Agreements.

Columbia is a generation-owning subsidiary of the Calpine Corporation ("Calpine").  In the Stipulation and Consent Agreement between FERC's Office of Enforcement and CES, dated April 18, 2007 (the "Stipulation and Consent Agreement"), CES stipulates that

---

[2]   A copy of the March 2007 Order is attached as Exhibit B to the Delk Declaration.

[3]   A copy of the Compliance Filing is attached as Exhibit C to the Delk Declaration.

4

"CES was formed in 2000 for the purpose of consolidating the Calpine Companies' natural gas and power marketing activities into a single subsidiary."[4] Columbia further states in a March 16, 2006 filing with FERC, that "Columbia sells the Columbia Facility's electric output to CES."[5] Columbia further alleges in its complaint in the Adversary Proceeding, that "CES coordinates the sale of electricity and electricity transmission services for . . . the Columbia generating facility."[6]

As of the date of the Motion, FERC has not entered an order determining whether SCE&G's application of transmission credits to transmission charges incurred by CES as described in the Compliance Filing complies with the March 2004 Order, the revised C&M Agreement and the "filed rate doctrine" under section 205 of the FPA.

## II.     The Adversary Proceeding to Recover Transmission Credits Issued to CES under the FERC Orders

Notwithstanding the fact that FERC has not determined whether SCE&G has complied with its obligation to issue transmission credits under the March 2004 Order, on April 30, 2007, Columbia filed a complaint in the Bankruptcy Court that seeks, among other alleged claims for relief, damages for SCE&G's alleged failure to "turnover" such credits to Columbia under section 542 of the Bankruptcy Code.

---

[4] Stipulation and Consent Agreement between the FERC's Office of Enforcement and CES at ¶ 2, executed April 18, 2007 and approved by the FERC in In re Calpine Energy Services, L.P., 119 FERC ¶ 61,125 (2007). A copy of the FERC order accepting the Stipulation and Consent Agreement, which includes a copy of the Stipulation and Consent Agreement in its entirety, is attached as Exhibit D to the Delk Declaration.

[5] Columbia's application for market-based rate authority stated that Columbia "sells the [Columbia Energy Center's] electric output to CES . . ." See March 16, 2006 filing submitted in Docket No. ER06-751-000, transmittal letter at page 4. A copy of the March 16, 2006 filing is attached as Exhibit E to the Delk Declaration.

[6] Complaint for Turnover of Property, Damages, and Declaratory Relief, filed by Columbia on April 30, 2007 in the United States Bankruptcy Court, Southern District of New York, at ¶ 18. A copy of the complaint is attached as Exhibit F to the Delk Declaration.

The complaint alleges two substantive claims against SCE&G: (a) that SCE&G has refused to turnover the transmission credits that allegedly constitute property of Columbia's chapter 11 estate; and (b) that SCE&G allegedly converted to its own use the transmission credits by issuing them to CES in connection with the transmission service taken by CES.[7] The complaint also seeks declaratory relief regarding the parties' respective rights to transmission credits and alleges that SCE&G violated the automatic stay by (a) issuing transmission credits to CES and (b) making the Compliance Filing in response to the directive from FERC in the March 2007 Order. As detailed below, the resolution of the issues and allegations raised in the complaint requires the determination of (a) whether SCE&G's application of transmission credits complied with the March 2004 Order and (b) whether SCE&G's Compliance Filing satisfied the directives set forth in the March 2007 Order. These questions are squarely within the special expertise and jurisdiction of FERC, and they are not questions of bankruptcy law.

## ARGUMENT

**I.      Withdrawal of the Reference is Mandatory
         Under Section 157(d) of the Judicial Code**

Withdrawal of the reference of the Adversary Proceeding is mandatory under section 157(d) of the Judicial Code because resolution of the Adversary Proceeding requires substantial consideration of non-title 11 federal law. Section 1334(a) of the Judicial Code provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334. Section 157(a) of the Judicial Code provides that each district court may refer cases that arise under title 11 to the bankruptcy judges for such district. 28 U.S.C. § 157(a). Under a standing order pursuant to section 157(c) of the Judicial Code, all chapter 11

---

[7]   SCE&G denies the allegations in the plaintiff's complaint and denies that the plaintiff is entitled to any of the relief sought in the complaint.

cases in the United States District Court for the Southern District of New York are automatically referred to the Bankruptcy Court for the Southern District of New York. Standing Order of Referral of Cases to Bankruptcy Judges, July 10, 1984 (Ward, Acting C.J.).

Despite the reference of chapter 11 cases to the Bankruptcy Court, under section 157(d) of the Judicial Code, a district court shall "withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities that affect interstate commerce." 28 U.S.C § 157(d). The purpose of the mandatory withdrawal provision in Section 157(d) is "to assure that an Article III judge decides issues calling for more than routine application of [federal] statutes outside the Bankruptcy Code." In re Horizon Air, 156 B.R. 369, 373 (N.D.N.Y. 1993) (citing Eastern Airlines, Inc. v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.), 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)).

Withdrawal of the reference is mandatory under section 157(d) if resolution of the proceeding would require "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); see also Enron Power Mktg. v. Cal Power Exch. Corp. (In re Enron), 2004 U.S. Dist. LEXIS 23868, at *7 (S.D.N.Y. Nov. 24, 2004)[8]; Calif. Dep't of Water Res. v. Calpine Corp. (In re Calpine Corp.), 337 B.R. 27, 31 (S.D.N.Y. 2006); United States Gypsum Co. v. National Gypsum Co. (In re National Gypsum Co.), 145 B.R. 539, 541 (N.D. Tex. 1992).

It is not necessary that the issues of non-title 11 federal law raised by the proceeding sought to be removed are "unsettled" or involve matters of "first impression." In re McCrory Corp., 160 B.R. 502, 505 (S.D.N.Y. 1993). It is only required that the claims asserted

---

[8] Copies of all unpublished decisions cited in the Memorandum are attached as Exhibit A.

7

in the proceeding present "substantial and material" issues under non-bankruptcy federal law. In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990); see also Exxon, 932 F.2d at 1026; Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.), 2003 U.S. Dist. LEXIS 189, at *11 (S.D.N.Y. Jan. 8, 2003).  Section 157(d) of the Judicial Code mandates withdrawal of the reference when the proceeding requires that the court engage in "more than the mere process of examining, thinking about or taking into account" other federal laws.  American Freight Sys., Inc. v. ICC (In re American Freight Sys.), 150 B.R. 790, 792 (D. Kan. 1993); see also In re McCrory Corp., 160 B.R. at 505; In re Horizon Air, Inc., 156 B.R. at 373.

   Under the FPA, FERC has the "exclusive authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce."  New England Power Co. v. New Hampshire, 455 U.S. 331, 340 (1982).  FERC action under the FPA is reviewable only by the United States courts of appeal. 16 U.S.C. § 825l(b).  This broad and exclusive grant of jurisdiction to FERC, with limited appellate review, has lead to the development of the "filed rate doctrine."  Under the filed rate doctrine, once FERC determines a reasonable rate under an energy contract no court can assume a "right to a different one on the ground that, in its opinion, it is the only or the more reasonable one."  Miss. Power & Light Co. v. Miss., 487 U.S. 354 (U.S. 1988) (quoting Nantahala Power & Light Co. v. Thornberg, 476 U.S. 953, 963-64 (1986)); Ark. La. Gas Co. v. Hall, 453 U.S. 571 (U.S. 1981) (same).  Further, FERC's exclusive jurisdiction under the "filed rate doctrine" extends beyond the rate approved by FERC and includes the terms and conditions of energy contracts regulated by FERC.  See Mississippi Power & Light, 487 U.S. at 371 (FERC's exclusive jurisdiction applies beyond rates); Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 966-67, 106 S. Ct. 2349, 90 L. Ed. 2d 943 (1986) (filed rate doctrine not limited to rates); Duke Energy Trading & Mktg., L.L.C. v. Davis, 267 F.3d 1042, 1056 (9th

Cir. 2001) (filed rate doctrine not limited to rates); In re Calpine Corp., 337 B.R. at 32 (same); In re NRG Energy, Inc., 2006 Bankr. LEXIS 1963 (Bankr. S.D.N.Y. 2006) (state law antitrust and unfair competition claims barred by filed rate doctrine); In re Enron Corp., 328 B.R. 75 (Bankr. S.D.N.Y. 2005) (claims preempted by the Federal Power Act and precluded by filed rate doctrine).

As set forth more fully below, withdrawal of the reference is mandatory with respect to the Adversary Proceeding. First, in order to resolve the Adversary Proceeding, a court must determine whether it has jurisdiction to order turnover of the transmission credits (as alleged by the plaintiff) notwithstanding FERC's exclusive jurisdiction over the application of the transmission credits under the FPA and the "filed rate doctrine." Second, if it were to determine that FERC's jurisdiction to determine whether SCE&G properly applied the transmission credits was not exclusive in this instance, the court would then need to determine whether SCE&G complied with the FPA, the "filed rate doctrine" and the March 2004 Order by issuing transmission credits to CES. Both of these questions clearly require the court to engage in just the type of substantial and material consideration of non-title 11 federal law that must be resolved by an Article III judge under section 157(d) of the Judiciary Code.

Because the C&M Agreement and the Transmission Agreements between the parties are filed with FERC, each of these contracts is subject to FERC's exclusive jurisdiction. See Fax Telecommunicaciones, Inc. v. AT&T, 138 F.3d 479, 488 (2d Cir. 1998). Further, in Columbia's filings with FERC regarding the transmission credits, Columbia invokes the "filed rate doctrine" and requests under section 206 of the FPA that FERC determine that the allocation of costs in the C&M Agreement are allegedly "unjust and unreasonable" pursuant to the FPA. See Protest of Columbia Energy LLC, filed on April 27, 2007 in FERC Docket No. ER03-1398-

9

000, at 15-18; Motion to Intervene and Protest of Columbia Energy LLC, filed on October 20, 2003 in FERC Docket No. ER03-1398-000, at 6-8.  Moreover, the dispute regarding the transmission credits arose in Columbia's initial protest to FERC regarding SCE&G's classification of certain facilities in the C&M Agreement.  In the March 2004 Order, FERC determined the facilities to be network upgrades and directed SCE&G to reimburse Columbia for the cost of the network upgrades "by granting Columbia credits against the transmission rates paid by Columbia to SCE&G."  March 2004 Order.  While SCE&G pursued its rights of appeal regarding FERC's findings and directives in the March 2004 Order, SCE&G issued the transmission credits to CES pursuant to the March 2004 Order.  In a proceeding currently pending before FERC, Columbia now protests SCE&G's issuance of the transmission credits on the basis that (according to Columbia's assertions) issuing the transmission credits to CES allegedly violated FERC's March 2004 Order and the "filed rate doctrine."  The resolution of each of these issues requires the review and consideration of non-title 11 federal law. Duke Energy Trading & Mktg., L.L.C., 267 F.3d at 1056 (discussing scope of FERC's exclusive jurisdiction); In re Calpine, 337 B.R. at 32 (same); In re NRG Energy, Inc., 2006 Bankr. LEXIS 1963 (same); In re Enron Corp., 328 B.R. at 75 (same).

    In the Adversary Proceeding, however, Columbia mischaracterizes the resolution of its claims that arise under the FPA, the FERC approved C&M Agreement and FERC's March 2004 Order as a matter of contract interpretation and bankruptcy law.  Contrary to Columbia's assertions, the resolution of these issues requires the interpretation of FERC's orders issued under the FPA regarding the transmission credits and FERC approved and regulated C&M Agreement.  As such, rather than simply involving issues of bankruptcy law, this Adversary Proceeding requires the Court to determine whether, pursuant to FERC's plenary jurisdiction under the FPA

10

and the "filed rate doctrine," only FERC can determine that (a) SCE&G has properly complied with FERC's directives regarding the transmission credits or (b) SCE&G has misinterpreted FERC's directives regarding the transmission credits. Under these circumstances, withdrawal of the reference of the Adversary Proceeding is mandatory under section 157(d) of the Judicial Code.

Further, two recent decisions in this district, one of which was rendered in these chapter 11 cases, illustrate that withdrawal of the reference is mandatory when the proceeding involves interpretation of the FPA, the scope of the "filed rate doctrine" and FERC approved and regulated agreements and tariffs. In each of these cases described below, the District Court withdrew the reference because the cases involved mixed issues of bankruptcy law and non-bankruptcy federal law under the FPA.

In Calpine, the debtor sought to reject certain utility contracts regulated by FERC under the FPA. 337 B.R. at 27. In response to the debtors' motion to reject the FERC regulated utility contracts, the California Department of Water Resources filed a motion to withdraw the reference under section 157(d) of the Judicial Code. At a hearing held on January 4, 2006, the District Court ordered withdrawal of the reference based upon its finding that the proceeding involved "substantial and material consideration of the interaction of federal law and bankruptcy law that require significant interpretation, including but not limited to what forum has the authority to reject FERC-related wholesale energy contracts." Hrg. Tr. 38:15-19 (Jan. 4, 2006), Southern Cal. Edison Co. v. Calpine Corp., No. 05-10842 (S.D.N.Y. Dec. 29, 2005).[9] The district court later held that neither the bankruptcy court nor the District Court had subject matter

---

[9] A copy of the Jan. 4, 2006 hearing transcript is attached to the Templeton Declaration as Exhibit B.

jurisdiction to authorize rejection of FERC regulated energy contracts because FERC has exclusive jurisdiction over "filed rate" energy contracts. In re Calpine., 337 B.R. at 31.

In Enron, the debtor initiated an adversary proceeding to recover from the California Power Exchange Corporation ("CalPX") the proceeds of certain letters of credit drawn by CalPX. 2004 U.S. Dist. LEXIS 23868. The debtor was required to provide the letters of credit for the benefit of CalPX and CalPX drew down the letters of credit pursuant to the terms of the CalPX tariff and rate schedule approved and regulated by FERC under the FPA. 2004 U.S. Dist. LEXIS 23868 at *2-3. The District Court explained that "as a threshold issue, it must be determined who has jurisdiction over the collateral at issue." Id. at *12. The District Court further explained that "such a determination requires an examination of the interrelation between the bankruptcy and federal energy regulatory laws and the spheres of authority that enforce those laws." Id. The District Court ordered withdrawal of the reference based upon its finding that the bankruptcy court could not "determine whether the letter-of-credit proceeds must be turned over to Enron's bankruptcy estate without substantial and material consideration of federal law beyond Title 11." Id.

As in both Calpine and Enron, resolution of the Adversary Proceeding will require significant consideration of the FPA regarding the rates, terms and conditions of the "filed rate" energy contracts between the parties. Further, as in Calpine and Enron, FERC has the exclusive jurisdiction under the FPA to resolve the parties' disputes regarding SCE&G's compliance with FERC's March 2004 Order and the "filed rate doctrine." As a result, withdrawal of the reference of the Adversary Proceeding is mandatory.

**II.    Alternatively, Cause Exists for Discretionary Withdrawal
of the Reference under Section 157(d) of the Judicial Code**

Even if this Court finds that withdrawal of the reference is not mandatory, cause exists for discretionary withdrawal of the reference.  Section 157(d) of the United States Code provides that a district court may withdraw the reference for cause shown. 28 U.S.C. § 157(d). District courts consider a number of factors to determine whether permissive withdrawal of the reference is justified "for cause shown," including:

(a)    whether the claim is "core" or "non-core;"

(b)    what is the most efficient use of judicial resources;

(c)    what is the delay and what are the costs to the parties; and

(d)    what will promote uniformity in bankruptcy administration.

Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).

The claims alleged in the Adversary Proceeding involve significant non-core issues.  A proceeding is core only if "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  28 U.S.C. § 157(b)(2).  As discussed above, although Columbia purports to assert "core" claims in the Adversary Proceeding (i.e. its alleged claim asserted in the complaint seeking to recover the transmission credits under section 542 of the Bankruptcy Code), each of Columbia's alleged "core" claims relates to, and is fundamentally dependent upon, the existence of a "non-core" claim, (i.e. Columbia's claim to receive transmission credits under the FPA and FERC's March 2004 Order).  In an attempt to manufacture a "core" issue, Columbia asserts in its complaint in the Adversary Proceeding that SCE&G began providing credits only in 2006 after Columbia and CES filed their bankruptcy petitions, even though both Columbia and CES are fully aware that

13

SCE&G began crediting transmission charges pursuant to FERC's order in 2004. As stated previously, SCE&G began issuing credits in June 2004, following the March 2004 Order, and neither CES nor Columbia challenged this crediting practice until over two years later. Further, Columbia alleges that SCE&G, by issuing credits to CES, has attempted a triangular setoff by allegedly setting off obligations owed to Columbia against "claims SCE&G has against CES." As discussed above, the issues for consideration here are whether SCE&G properly applied transmission credits under the March 2004 Order, the FPA and the "filed rate doctrine" and whether SCE&G's Compliance Filing satisfied the directives set forth in the March 2007 Order. These issues must be resolved by application of non-title 11 federal law. As such, cause exists to withdraw the reference of the Adversary Proceeding.

Withdrawal of the reference also would be the most efficient use of judicial resources. Because the Adversary Proceeding clearly contains substantial non-core allegations arising under non-title 11 federal law, it would be far more efficient to withdraw the reference to determine whether, as an initial matter, exclusive jurisdiction regarding the parties dispute over the transmission credits rests with FERC. As discussed above, the District Court is the proper forum to resolve this issue. Permitting the Adversary Proceeding to go forward in the Bankruptcy Court without first determining whether FERC has exclusive jurisdiction over the claims alleged in the complaint, including the proper application of the transmission credits pursuant to the March 2004 Order would be an inefficient use of judicial resources.

Other factors also strongly support permissive withdrawal of the reference of the Adversary Proceeding. Withdrawal of the reference would not result in delay or any additional cost to the parties. Allowing the Bankruptcy Court to consider issues that properly are before the FERC and have been ongoing before FERC for four years would result in unnecessary delay and

additional expense for the parties.  Withdrawal of the reference will allow the District Court to determine whether FERC has exclusive jurisdiction over the parties' dispute regarding the transmission credits and will prevent unnecessary delay and additional expense.

Withdrawal of the reference also will promote uniformity in the administration of the Debtors' chapter 11 cases.  As discussed above, in <u>Southern Cal. Edison Co. v. Calpine Corp</u> the District Court withdrew the reference of a similar dispute regarding "filed rate" wholesale energy contracts in these chapter 11 cases.  It would be entirely inconsistent with the District Court's earlier decision in these chapter 11 cases for this Court to allow the Adversary Proceeding to go forward in the Bankruptcy Court notwithstanding FERC's jurisdiction over disputes regarding "filed rate" energy contracts.

WHEREFORE, SCE&G respectfully requests that the Court enter an order (i) withdrawing the reference to the Bankruptcy Court of the Adversary Proceeding and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: June 1, 2007                           Respectfully submitted,


  /s/  Michael J. Templeton
Michael J. Templeton (MT 8709)
Ross S. Barr (RB 3685)
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939


-and-


Mark A. Cody (*pro hac vice*)
Robert Krebs (*pro hac vice*)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
(312) 782-3939


ATTORNEYS FOR SOUTH CAROLINA
ELECTRIC & GAS COMPANY