**EXHIBIT A**

Case 1:07-cv-04709-LAK    Document 3-2    Filed 06/04/2007    Page 1 of 11

106 FERC ¶ 61,265
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Pat Wood, III, Chairman;
Nora Mead Brownell, Joseph T. Kelliher,
and Suedeen G. Kelly.

| | |
|---|---|
| South Carolina Electric & Gas Company | Docket Nos. ER03-1398-000 |
| | ER03-1398-001 |
| | and ER03-1398-002 |

ORDER ACCEPTING INTERCONNECTION
AGREEMENTS, AS MODIFIED

(Issued March 22, 2004)

1.  In this order the Commission accepts for filing agreements between South Carolina Electric & Gas Company (SCE&G) and Columbia Energy LLC (Columbia), conditioned upon SCE&G refiling the agreements to comply with Commission policy. This order benefits customers by allowing interconnection of new generating facilities without raising rates for SCE&G's existing customers, thus encouraging more competitive markets.

I. **Background**

2.  On September 29, 2003, SCE&G filed, for the first time, agreements (collectively, the IAs)[1] relating to the interconnection of the Columbia generating facility

---

[1] The IAs consist of: Construction and Maintenance Agreement Between South Carolina Electric and Gas Company and Columbia Energy LLC; Operating Agreement between South Carolina Electric and Gas Company and Columbia Energy LLC; Consent to Collateral Assignment Among South Carolina Electric and Gas Company, Columbia Energy LLC, and Credit Suisse First Boston, New York Branch; and Calpine Corporation Guaranty Among Calpine Corporation, as Guarantor, and South Carolina Electric and Gas Company.

Docket No. ER03-1398-000, et al.                                                                      - 2 -

(the Facility) with the SCE&G transmission system.[2] SCE&G requests that the effective date of the IAs be the proposed generator in-service date of November 15, 2003, and accordingly requests waiver of the 60-day notice requirement.

3. The IAs set forth the rates, terms and conditions for the construction, maintenance and operation of the 115 kV Facilities and the "U" Facilities which SCE&G claims are needed for the interconnection of the Facility to the SCE&G transmission grid as described above. The IAs characterize these as interconnection facilities, and directly assign the construction and Operations and Maintenance (O&M) costs of them to Columbia.[3]

## II. Notices of Filings and Further Filings

4. Notice of the September 29, 2003 filing was published in the Federal Register, 68 Fed. Reg. 59,388 (2003), with comments, protests, and motions to intervene due on or before October 20, 2003. On October 20, 2003, Columbia filed a motion to intervene and protest. On November 4, 2003, SCE&G filed an answer to Columbia's protest. The answer included, for the first time, support for the O&M charge in the IAs, as well as the justification for treating the facilities at issue as direct assignment facilities for which Columbia must pay and not receive any transmission credits. Accordingly, the November 4, 2003 answer was treated as an amendment to SCE&G's September 29, 2002 filing. Notice of SCE&G's November 4, 2003 answer/amendment was published in the Federal Register, 68 Fed. Reg. 64,883 (2003), with comments due on or before November 24, 2003. On November 24, 2003, Columbia filed a response to SCE&G's filing, and The Public Service Commission of South Carolina (the South Carolina Commission) filed a notice to intervene and comments. On December 9, 2003, Columbia filed an answer to the South Carolina Commission's comments. On December 23, 2003, Commission staff issued a letter requesting SCE&G to furnish additional information. On January 22, 2004, SCE&G filed a response to the request. The response was noticed

---

[2] The Facility consists of a gas turbine generator which is electrically connected to the SCE&G transmission system at the Edenwood 115 kV Bus 2 line (referred to as the 115 kV Facilities) and a steam generator and a gas turbine generator which are electrically connected to the SCE&G transmission system via two parallel 230 kV lines that link the generators to existing transmission lines between the Edenwood substation and the Wateree substation (referred to as the "U" Configuration or the "U" Facilities) as shown on the attached Appendix.

[3] See Construction IA, Definitions.

Docket No. ER03-1398-000, et al.                                                      - 3 -

on February 4, 2004 with comments due February 12, 2004. On February 12, 2004, Columbia filed a response to SCE&G's response.

### III. Arguments

#### A. Columbia's Protest

5. Columbia asserts that SCE&G has erroneously classified the "U" Facilities, which are beyond the point of interconnection with the transmission grid, as direct assignment facilities. It argues that under Commission policy the "U" Facilities should be classified as network upgrades eligible for transmission credits with interest.[4] Accordingly, Columbia requests that SCE&G not be allowed to receive O&M charges with respect to the "U" facilities, and that the Commission should order SCE&G to refund with interest the O&M charges collected to date. Further, Columbia requests that the Commission order settlement discussions on the level of the O&M charges for those facilities that are properly directly assigned to Columbia, since the parties are still discussing this matter.

6. Columbia argues that the fact that it has executed the IAs does not immunize the IAs from Commission review. Columbia cites to Article 2.5 of the Construction IA and Article 2.4 of the Operating IA, which Columbia asserts expressly reserve Columbia's right under Section 206 of the Federal Power Act (FPA)[5] to petition the Commission for a determination that the rates in the IAs are unjust and unreasonable. Columbia contends that in Duke Energy Hinds, 102 FERC ¶ 61,068 at 61,171 (2003), the Commission held that such a provision preserves the generator's right under FPA Section 206 to have the Commission revise the executed IA if it did not meet the just and reasonable standard.

#### B. SCE&G's Answer and Amendment

7. SCE&G argues that it agreed to Columbia's request that rather than the T configuration that SCE&G proposed, SCE&G construct an alternative configuration of the interconnection on the condition that Columbia pay for those facilities without any transmission credits. SCE&G stresses that it accommodated Columbia's request for construction of a separate second parallel line from the grid to the generator, which makes the connection a "U" Configuration and provides for more reliable service; this

---

[4] Although Columbia's protest refers to both the 115 kV Facilities and the "U" Facilities, the subsequent pleadings make clear that its protest relates only to the "U" Facilities. Accordingly, this order will only discuss the "U" Facilities.

[5] 16 U.S.C. § 824d (2002).

Docket No. ER03-1398-000, et al.                                                                                     - 4 -

was more than what was minimally necessary for the interconnection.[6] The alternative configuration, SCE&G argues, provides no benefit to SCE&G, or to any of its customers other than Columbia.

8.  SCE&G states that it recognizes that Commission policy requires that when the generator pays for upgrades to the transmission network, it must be refunded that amount through credits against its transmission rates. SCE&G also recognizes that the Commission defines a network facility as any facility "at or beyond" the point where the generator interconnects with the transmission grid. SCE&G concludes, however, that the facilities "were added solely at Columbia's request to connect Columbia's generators to the grid and hence are not facilities beyond the point where the generator connects to the grid."[7]

9.  SCE&G also refers to proceedings before the South Carolina Commission conducted under South Carolina's Siting Act (the Utility Facility Siting and Environmental Protection Act, S.C. Code Ann. §§ 58 33-10, et. seq.). It states that in those proceedings Columbia represented that it would bear all the costs to construct the facilities at issue here. In fact, SCE&G points out that the South Carolina Commission found as a matter of public convenience and necessity that the 230 kV "U" Facilities are interconnection facilities needed to connect the Columbia Energy Center to the SCE&G transmission system but that serve no other SCE&G customer.

10. SCE&G also argues that the Commission should reject Columbia's request for settlement discussions regarding the O&M charge for the 115 kV Facilities, which the parties agree should be directly assigned. SCE&G asserts that it provided Columbia with ample cost support for the multiplier used to calculate the O&M charge, and that the charge was the result of discussion between the parties. Thus, during the negotiations, SCE&G provided to Columbia cost data based on information contained in SCE&G's Form 1. SCE&G also refers to Exhibit No. WGW-6 attached to its November 4, 2003 amendment to its filing containing additional cost support for the proposed O&M charge.

11. SCE&G states that the Monthly Facilities Fee in section 7.3.1 of the executed Construction IA is calculated based on the cost of the interconnection facilities multiplied

---

[6] In its January 22, 2004 response SCE&G sets forth the cost of the U Configuration as $4,721,619 (actual), and the T configuration as $4,356,000 (estimated). SCE&G also stated that since March 15, 2000, the two interconnections it has made with respect to its own generating facilities more closely resemble the U Configuration.

[7] SCE&G Answer at 7.

Unofficial FERC-Generated PDF of 20040322-0219 Issued by FERC OSEC 03/22/2004 in Docket#: ER03-1398-000
Case 1:07-cv-04709-LAK    Document 3-2    Filed 06/04/2007    Page 6 of 11

Docket No. ER03-1398-000, et al.                                                                    - 5 -

by a Facilities Fee Charge Multiplier of 0.225% per month. This Facilities Fee Charge Multiplier, according to SCE&G, was the result of substantial negotiation between Columbia and SCE&G.

### C. The South Carolina Commission's Comments

12.     The South Carolina Commission certificated the Facility. It states that Columbia's position here contradicts the representations Columbia made to the South Carolina Commission in the state siting proceeding. The South Carolina Commission contends that at no time during that proceeding did Columbia advise the South Carolina Commission that Columbia expected SCE&G to grant it transmission credits for the costs of connecting the generator to SCE&G's transmission system. The South Carolina Commission contends that when Columbia sells electric power at wholesale, it will have the opportunity to recoup in the rates that it negotiates with its customers the construction costs that it agreed to pay for in the Construction IA.

13.     The South Carolina Commission states that it disagrees with the Commission's policy, which it asserts requires all transmission customers to share in the cost of network upgrades necessitated by new generator interconnections.

### D. Response of Columbia to SCE&G's Answer/Amendment

14.     Columbia reiterates the argument set forth in its protest. It argues that SCE&G admits that Commission precedent requires that the facilities at issue here be treated as Network Upgrades. Columbia contends that SCE&G is relying on a "but for" test, which is not consistent with the Commission's pricing policy.

15.     With respect to the O&M charge, Columbia again asserts that SCE&G's answer does not provide any valid reason why the dispute regarding the level of applicable O&M charges should not be referred to settlement procedures.[8]

---

[8] Columbia's answer to the South Carolina Commission's comments states that it is not changing the representations it made in the South Carolina proceedings, and states, at 3, that it is clarifying that it is seeking credits of approximately $4.5 million "consistent with the original $5 million cost estimate for the network 230 kV facilities acknowledged in the SC PSC record."

Docket No. ER03-1398-000, et al.                                                                   - 6 -

## IV. Discussion

### A. Procedural Matters

16.  Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2003), the notice of intervention and timely, unopposed motion to intervene serve to make the entities that filed them parties to this proceeding.[9] Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 85.213(a)(2) (2003), prohibits an answer to a protest unless otherwise ordered by the decisional authority. In this case SCE&G's answer was also an Amendment to its filing. We will accept SCE&G's answer and all the subsequent pleadings because they provided information that assisted us in our decision-making process.

### B. The Interconnection Agreements

17.  We will accept SCE&G's IAs as modified below, to be effective November 15, 2003, as requested, subject to SCE&G submitting a compliance filing within 30 days of this order, as discussed below.

#### 1. Should the Facilities at Issue Be Directly Assigned to Columbia?

18.  In Consumers Energy Co., 96 FERC ¶ 61,132 (2001) (Consumers), the Commission rejected the direct assignment of improvements to integrated grid facilities (network upgrades) even if those facilities would not have been installed but for a particular request for interconnection service. However, the Commission allows incremental pricing of the generator's transmission service as an alternative to embedded-cost rolled in rates, if rolling in these costs would raise rates to the transmission provider's existing customers.

19.  Subsequent Commission orders[10] make it clear that network facilities include all facilities "at or beyond the point" where the customer or generator connects to the grid.

---

[9] The South Carolina Commission titled its filing as a Motion to Intervene, but under Commission rules, it is entitled to file a notice of intervention.

[10] E.g., Southern Company Services, Inc., 105 FERC ¶ 61,055 (2003); PJM Interconnection, L.L.C., 104 FERC ¶ 61,154 (2003); Entergy Gulf States, Inc., 98 FERC ¶ 61,014, reh'g denied, 99 FERC ¶ 61,095 (2002) (Entergy). See also Entergy Services, Inc. 95 FERC ¶ 61,437, reh'g denied, Entergy Services, Inc., 96 FERC ¶ 61,311 (2001), aff'd, Entergy Services, Inc. v. FERC, 319 F.3d 536 (D.C. Cir. 2003).

Docket No. ER03-1398-000, et al.                                                                -7-

This is without regard to the purpose of the upgrade (e.g., to relieve overloads, to remedy stability and short-circuit problems, to maintain reliability, or to provide protection and service restoration). Thus, the interconnecting customer must initially pay the cost of network upgrades at or beyond the point where it interconnects with the transmission system, but that customer must be repaid, over time, by transmission credits.

20.     We find that the point of interconnection here is where the "U" Facilities attach beyond the meters at the Facility, which is labeled as the "Point of Interconnection" on the Appendix attached to this order.[11] Therefore, we find that the "U" Facilities are network upgrades, and their cost must be repaid, over time, to Columbia by SCE&G granting Columbia credits against the transmission rates paid by Columbia to SCE&G.

21.     The South Carolina Commission states that it disagrees with the Commission's policy which it asserts requires that all transmission customers share in the cost of network upgrades necessitated by new generator interconnections. However, Commission policy protects existing customers from rate increases resulting from interconnection of a new generator. As we recently explained in Order No. 2003-A[12] a utility may charge a transmission rate that is the higher of (1) a rate based on the embedded (rolled-in) costs of the transmission system, including the cost of the upgrades in the numerator and the additional usage of the transmission system in the denominator, or (2) an incremental rate (a rate associated with the cost of the upgrades divided by the projected transmission usage of the new generator). This "higher of" policy ensures that existing transmission customers do not face rate increases as a result of network upgrades necessitated by a new interconnection.[13]

22.     Both SCE&G and the South Carolina Commission argue that we should permit direct assignment because Columbia signed the IAs, which impose all the costs at issue here on Columbia without the provision of transmission credits. We do not agree. The fact that the generator executed an agreement does not relieve the Commission of its obligation to determine whether the contract is just and reasonable when it is submitted to

---

[11] We reject SCE&G's argument that these facilities are not at or beyond the point where the generator interconnects to the grid because the facilities were added at Columbia's request. The point of interconnection is a physical location, and it is not determined by who initiated the construction process.

[12] 106 FERC ¶ 61,220 (March 5, 2004).

[13] The Commission's interconnection pricing policy is described in greater detail in Order No. 2003-A, 106 FERC ¶ 61,220 at PP 579-590 (2004).

Docket No. ER03-1398-000, et al.                                                              - 8 -

the Commission for its approval. Commission approval of that agreement requires the Commission to find that "in its independent judgment, it satisfies the statutory test."[14] The Court of Appeals has emphasized that under FPA Section 205 it is the Commission's duty to ensure that such an agreement provides for rates that are "just and reasonable," and "[w]hether a rate satisfies this requirement is to be determined by FERC, not the parties to an agreement, however voluntary their agreement may be."[15] Here, the IAs have not been submitted to the Commission until now, even though they were executed in May 2001, and we are exercising our independent judgment in determining whether to accept the IAs, as the FPA requires.[16]

23.     In addition to the facilities already constructed as discussed above, section 7.2 of the Construction IA further obligates Columbia to pay the costs of certain "New Capital Additions" that may be built in the future. Consistent with Commission policy, Columbia must receive credits for any New Capital Additions for which it has paid that are at or beyond the point of interconnection.

24.     In addition, the Construction IA does not provide for interest on monies paid. Consistent with the Commission's finding in Order No. 2003[17], SCE&G is directed to revise the Construction IA to provide that the transmission credits will reflect interest on the monies paid from the date of collection until the generator is fully reimbursed through credits to its transmission bills, consistent with 18 C.F.R. § 35.19a(a)(2) (2003), unless SCE&G proposes to charge an incremental rate.

25.     Moreover, in Duke Energy Corp., 95 FERC ¶ 61,279 (2001), the Commission held that the direct assignment of O&M charges is improper where the facilities are network upgrades and not interconnection facilities. Accordingly, SCE&G may not directly assign to Columbia O&M costs associated with the "U" Facilities which we find above to be network upgrades. SCE&G may only file under this agreement to recover O&M costs associated with actual interconnection facilities, which we have determined to be the 115

---

[14] Tejas Power Co. v. FERC, 908 F.2d 998 at 1003 (D.C. Cir. 1990).

[15] Pennsylvania Electric Company, 11 F.3d 207 at 210 (D.C. Cir. 1993).

[16] We note that Article 2.5 of the Construction IA and Article 2.4 of the Operating IA permit either party to file (pursuant to sections 205 or 206 of the Federal Power Act) for changes in rates, terms or conditions of service under the IA.

[17] 104 FERC ¶ 61,103 at P 723 (2003). See also American Electric Power Service Corp., 97 FERC ¶ 61,098 (2001).

Docket No. ER03-1398-000, et al.                                                                                                  - 9 -

kV Facilities, the costs of which may be directly assigned consistent with Commission policy. SCE&G must make refunds with interest of any O&M charges inappropriately collected with respect to network upgrade facilities, consistent with 18 C.F.R §35.19a(a)(2) (2003).

### 2. O&M Charges for Directly Assigned Facilities

26.    We find that SCE&G's proposed Facilities Fee Charge Multiplier of 0.225% per month as applied to direct assignment facilities is adequately supported by Exhibit No. WGW-6 attached to its November 4, 2003 supplement to its filing.

27.    In its protest, Columbia stated that it had received a firm quote from an independent company to perform the services at a lower percentage. However, Columbia presented no documentation or support for a different percentage O&M charge, nor any criticism of SGE&G's methodology in computing the O&M charge. Accordingly, we see no basis for settlement discussions over the percentage, and accept SGE&G's proposed percentage, as set forth in the IAs.

The Commission orders:

(A)  SCE&G is directed to make a compliance filing within 30 days of the date of this order, as discussed in the body of the order.

(B)  SCE&G's Interconnection Agreements are hereby accepted, as modified, subject to a compliance filing pursuant to Ordering Paragraph (A) above, to be effective November 15, 2003.

By the Commission.

(SEAL)

Linda Mitry,
Acting Secretary.

Appendix

