**EXHIBIT E**

Case 1:07-cv-04709-LAK   Document 3-7   Filed 06/04/2007   Page 1 of 14




# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

| | | |
|---|---|---|
| JAMES B. VASILE | SUITE 450 | TEL (202) 508-6600 |
| DIRECT (202) 508-6662 | 1500 K STREET NW | FAX (202) 508-6699 |
| jimvasile@dwt.com | WASHINGTON, D.C. 20005-1262 | www.dwt.com |

March 16, 2006

Honorable Magalie R. Salas
Secretary
Federal Energy Regulatory Commission
888 First Street, NE, Room 1A
Washington, DC 20426

Re:   Carville Energy LLC              Docket No. ER06-    749-000
      Morgan Energy Center, LLC        Docket No. ER06-    750-000
      Columbia Energy LLC              Docket No. ER06-    751-000
      Pine Bluff Energy, LLC           Docket No. ER06-    752-000
      CPN Pryor Funding Corporation    Docket No. ER06-    753-000
      Auburndale Power Partners, L.P.  Docket No. ER06-    754-000

Dear Secretary Salas:

Pursuant to Section 205 of the Federal Power Act ("FPA"),[1] Part 35 of the Federal Energy Regulatory Commission's ("FERC" or "Commission") regulations,[2] Rules 203 and 205 of the Commission's Rules of Practice and Procedure,[3] the Commission's Order No. 671,[4] and the Commission's Order on Clarification of Order No. 671,[5] Carville Energy LLC ("Carville"), Morgan Energy Center, LLC ("Morgan"), Columbia Energy LLC ("Columbia"), Pine Bluff Energy, LLC ("Pine Bluff"), CPN Pryor Funding Corporation ("Pryor"), and Auburndale Power Partners, L.P. ("Auburndale") (collectively, "Applicants") hereby submit for filing proposed market-based rate schedules under which each of the Applicants, which are all qualifying facilities ("QFs"), will make wholesale sales of electric energy, capacity, replacement reserves, and certain ancillary services that will become subject to Sections 205 and 206 of the FPA under

---

[1] 16 U.S.C. § 824d (2000).

[2] 18 C.F.R. Pt. 35 (2005).

[3] 18 C.F.R. §§ 385.203, 385.205.

[4] *Revised Regulations Governing Small Power Production and Cogeneration Facilities*, "Order No. 671," FERC Stats. & Regs. ¶ 31,203 (2006).

[5] *Revised Regulations Governing Small Power Production and Cogeneration Facilities*, "Order on Clarification," 114 FERC ¶ 61,128 (2006).

Honorable Magalie R. Salas
March 16, 2006
Page 2

the Commission's new regulations at 18 C.F.R. § 292.601(c)(1).[6] Applicants also propose to reassign transmission capacity and resell Firm Transmission Rights. In addition, Applicants request that the Commission grant certain waivers it has previously granted to wholesale power producers with market-based rate authority.

**I. DOCUMENTS SUBMITTED**

This filing consists of an original and six (6) copies of the following:

1. This letter of transmittal;

2. An affidavit of Julie R. Solomon, Vice President at CRA International;[7] and

3. A Market-Based Rate Schedule for each Applicant.[8]

**II. COMMUNICATIONS**

All communications and service related to this application should be directed to the following:

James B. Vasile
Howard A. Benowitz
Davis Wright Tremaine LLP
1500 K Street, NW, Suite 450
Washington, DC 20005
Telephone: (202) 508-6662
Facsimile: (202) 508-6699
Email: Jimvasile@dwt.com

Sarah G. Novosel
Vice President and Managing Counsel
Calpine Corporation
1401 H Street, NW, Suite 510
Washington, DC 20005
Telephone: (202) 777-7623
Facsimile: (202) 589-0922
Email: SNovosel@calpine.com

**III. STATEMENT OF ISSUES**

1. Whether the Commission should accept the Applicants' respective market-based rate schedules and grant the Applicants the requested market-based ratemaking authority pursuant to Section 205 of the FPA and requested waivers?

**IV. DESCRIPTION OF APPLICANTS AND RELEVANT AFFILIATES**

Each of the Applicants except Auburndale is an indirect, wholly-owned subsidiary of Calpine Corporation ("Calpine"). Calpine is a Delaware corporation engaged through subsidiaries in the ownership and operation of independent power production facilities and the wholesale marketing

---

[6] *Id.* at P 3; 18 C.F.R. § 292.601(c)(1).

[7] A copy of the affidavit is attached hereto at Attachment A.

[8] The Market-Based Rate Schedules are attached hereto at Attachments B-G. Each rate schedule is designated pursuant to the requirements of FERC's Order No. 614, *Designation of Electric Rate Schedule Sheets*, FERC Stats. & Regs. Regulations Preambles July 1996-December 2000 ¶ 31,096 (2000).

Honorable Magalie R. Salas
March 16, 2006
Page 3



of electricity in the United States and abroad.[9] On numerous occasions, the Commission has authorized various Calpine affiliates to sell energy and related services at market-based rates, finding that Calpine and its affiliates do not possess market power in generation or transmission and cannot erect barriers to entry.[10]

Auburndale, a limited partnership organized under the laws of the State of Delaware, is an indirect subsidiary of both Calpine and ArcLight Energy Partners Fund I, L.P. ("ArcLight"), a Delaware limited partnership. ArcLight is a private equity investment fund and an indirect passive owner of Auburndale. Auburndale owns and operates the Auburndale Power Plant ("Auburndale Facility"), an approximately 150 megawatt ("MW") gas-fired cogeneration facility located in Auburndale, Florida. The Commission certified the Auburndale Facility as a qualifying cogeneration facility ("QF") by order dated March 5, 1993, in Docket No. QF93-29-000, and it currently retains QF status.[11] The Auburndale Facility interconnects with the Tampa

---

[9] On December 20, 21, and 27, 2005, Calpine and certain of the Applicants, specifically Carville, Morgan, Columbia, Pine Bluff, and Pryor, filed voluntary petitions to restructure under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1330, in the U.S. Bankruptcy Court for the Southern District of New York. In filing these market-based rate applications, the Applicants do not intend to waive any protections that might be afforded to them under the Bankruptcy Code, including but not limited to those protections provided by Section 362 thereof.

[10] *See Decatur Energy Center, LLC*, Docket No. ER06-441-000 (issued Feb. 6, 2006); *CES Marketing VI, LLC*, 111 FERC ¶ 61,261 (2005); *Metcalf Energy Center, LLC*, 110 FERC ¶ 61,013 (2005); *Calpine Bethpage 3, LLC*, Docket No. ER05-48-000 (issued Jan. 3, 2005); *Mankato Energy Center, LLC*, Docket No. ER04-1221-000 (issued Dec. 30, 2004); *Pastoria Energy Center, LLC*, Docket No. ER05-68-000 (issued Dec. 17, 2004); *Calpine Fox LLC*, 109 FERC ¶ 61,058 (2004); *Goldendale Energy Center, LLC*, Docket No. ER04-1038-000 (issued Sept. 16, 2004); *Bethpage Energy Center 3, LLC*, Docket No. ER04-1099-000 (issued Sept. 16, 2004); *TBG Cogen Partners*, Docket No. ER04-1100-000 (issued Sept. 16, 2004); *Calpine Newark, LLC*, Docket Nos. ER04-831-000 and -001 (issued July 21, 2004); *Rocky Mountain Energy Center, LLC*, Docket No. ER03-1288-000 (issued Oct. 3, 2003); *Fox Energy Company LLC*, Docket No. ER03-983-000 (issued July 28, 2003); *Riverview Energy Center, LLC*, Docket No. ER03-611-000 (issued Apr. 22, 2003); *Calpine PowerAmerica-OR, LLC*, Docket No. ER03-341-000 (issued Feb. 24, 2003); *Calpine PowerAmerica-CA, LLC*, Docket No. ER03-342-000 (issued Feb. 24, 2003); *Calpine California Equipment Finance Company, LLC*, Docket No. ER03-290-000 (issued Jan. 24, 2003); *CES Marketing, LLC*, Docket No. ER03-205-000 (issued Jan. 16, 2003); *Riverside Energy Center, LLC*, Docket No. ER03-49-000 (issued Dec. 9, 2002); *Blue Spruce Energy Center, LLC*, Docket No. ER03-25-000 (issued Nov. 19, 2002); *CPN Bethpage 3rd Turbine, Inc.*, Docket No. ER02-1959-000 (issued July 23, 2002); *Calpine Oneta Power, L.P.*, Docket No. ER02-1367-000 and -001 (issued July 17, 2002); *Auburndale Peaker Energy Center, L.L.C.*, Docket No. ER02-1633-000 (issued June 19, 2002); *Yuba City Energy Center, LLC*, Docket No. ER02-1512 (issued June 10, 2002); *Zion Energy LLC*, Docket No. ER02-1319-000 (issued May 10, 2002); *Hermiston Power Partnership*, Docket No. ER02-1257-000 (issued May 3, 2002); *Delta Energy Center, LLC*, 98 FERC ¶ 61,124 (2002); *Gilroy Energy Center, LLC, et al.*, 97 FERC ¶ 61,325 (2001); *South Point Energy Center, LLC*, Docket No. ER01-2887 (issued Dec. 3, 2001); *CPN Pleasant Hill, L.L.C.*, Docket No. ER01-915-000 (issued Feb. 20, 2001); *Calpine Energy Services, L.P.*, Docket No. ER00-3562-000 (issued Sept. 21, 2000); *Gleason Power I, L.L.C., et al.*, 90 FERC ¶ 61,252 (2000); *Lake Worth Generation, L.L.C.*, 90 FERC ¶ 61,164 (2000); *Sierra Pacific Energy Co., et al.*, 90 FERC ¶ 61,018 (2000); *Rumford Power Associates Limited Partnership*, Docket No. ER00-2080-000 (issued May 17, 2000); *Geysers Power Company, LLC, et al.*, 87 FERC ¶ 61,108 (1999).

[11] *Auburndale Power Partners, L.P.*, 62 FERC ¶ 62,161 (1993). The Commission issued a letter order granting Auburndale's request for waiver of the Commission's operating standard in Docket Nos. QF93-

Unofficial FERC-Generated PDF of 20060322-0153 Received by FERC OSEC 03/16/2006 in Docket#: ER06-749-000
Case 1:07-cv-04300-LAK   Document 3-7   Filed 06/04/2007   Page 5 of 14
Honorable Magalie R. Salas
March 16, 2006
Page 4

Electric Company ("TECO") transmission system. Auburndale sells more than 90% of the Auburndale Facility's electric output to Progress Energy under three long-term contracts executed pursuant to Florida's implementation of section 210 of the Public Utility Regulatory Policies Act of 1978, and the Auburndale Facility's remaining energy is sold into the wholesale market. The Auburndale Facility's thermal output is sold to Florida Distillers and Cutrale Citrus Juices. Auburndale does not own or operate facilities for the transmission of electricity in interstate commerce other than interconnection facilities used solely to transmit power from the Auburndale Facility to the grid.

Carville, a Delaware limited liability company, owns and operates the Carville Energy Center ("Carville Facility"), an approximately 531 MW gas-fired cogeneration facility located in St. Gabriel, Louisiana. The Commission certified the Carville Facility as a QF by order dated October 21, 1999, in Docket No. QF98-83-001, and it currently retains QF status.[12] The Carville Facility interconnects with the Entergy Gulf States, Inc. ("Entergy Gulf States") transmission system. Carville sells the Carville Facility's electric output to an affiliated power marketer, Calpine Energy Services, L.P. ("CES"), Entergy Gulf States, and Cos-Mar Corporation ("Cos-Mar") and the Carville Facility's thermal output to Cos-Mar. Carville does not own or operate facilities for the transmission of electricity in interstate commerce other than interconnection facilities used solely to transmit power from the Carville Facility to the grid.

Morgan is a Delaware limited liability company and owns and operates the Morgan Energy Center ("Morgan Facility"), an approximately 825 MW gas-fired QF[13] located in Decatur, Alabama. The Morgan Facility interconnects with the Tennessee Valley Authority ("TVA") transmission system. Morgan sells the electric output of the Morgan Facility to CES, TVA, and BP Amoco PLC and the thermal output to BP Amoco PLC. Morgan does not own or operate facilities for the transmission of electricity in interstate commerce other than interconnection facilities used solely to transmit power from the Morgan Facility to TVA's system.

Columbia, a Delaware limited liability company, owns and operates the Columbia Energy Center ("Columbia Facility"), an approximately 641 MW gas-fired QF[14] located in Columbia, South Carolina. The Columbia Facility interconnects with the South Carolina Electric and Gas Company ("SCEG") transmission system. Columbia sells the Columbia Facility's electric output to CES and thermal output to Eastman Chemical Company. Columbia does not own or operate

---

29-003 and EL95-20-000 on April 26, 1995. Auburndale filed notices of self-recertification of QF status in Docket No. QF93-29-001 on December 30, 1992; Docket No. QF93-29-002 on March 25, 1994; Docket No. QF93-29-004 on August 2, 1996; Docket No. QF93-29-006 on March 3, 1998; Docket No. QF93-29-008 on July 11, 2003; and Docket No. QF93-29-009 on October 1, 2003.

[12] *Carville Energy LLC*, 89 FERC ¶ 62,046 (1999). A notice of self-recertification of QF status for the Carville Facility was filed on November 8, 2000 in Docket No. QF98-83-002.

[13] Morgan filed a notice of self-certification as a QF for the Morgan Facility on April 19, 2001 in Docket No. QF01-84-000. The Commission granted Morgan a limited waiver of the Commission's efficiency standard for QFs on April 16, 2004, in Docket No. QF01-84-001. *Morgan Energy Center, LLC*, 107 FERC ¶ 61,031 (2004).

[14] Columbia filed a notice of self-certification as a QF for the Columbia Facility on July 12, 2000 in Docket No. QF00-79-000. A notice of self-recertification of QF status for the Columbia Facility was filed on November 30, 2000, in Docket No. QF00-79-001.

Unofficial FERC-Generated PDF of 20060322-0153 Received by FERC OSEC 03/16/2006 in Docket#: ER06-749-000
Case 1:07-cv-04709-LAK    Document 3-7    Filed 06/04/2007    Page 6 of 14

Honorable Magalie R. Salas
March 16, 2006
Page 5

facilities for the transmission of electricity in interstate commerce other than interconnection facilities used solely to transmit power from the Columbia Facility to SCEG's system.

Pine Bluff, a Delaware limited liability company, owns and operates the Pine Bluff Energy Center ("Pine Bluff Facility"), an approximately 215 MW gas-fired QF[15] located in Pine Bluff, Arkansas. The Pine Bluff Facility interconnects with the Entergy Arkansas, Inc. transmission system. Pine Bluff sells the electric output of the Pine Bluff Facility to International Paper and CES and the thermal output to International Paper. Pine Bluff does not own or operate facilities for the transmission of electricity in interstate commerce other than interconnection facilities used solely to transmit power from the Pine Bluff Facility to the grid.

Pryor, a Delaware corporation, owns and operates the Pryor Power Plant ("Pryor Facility"), an approximately 90 MW gas-fired QF in Pryor, Oklahoma. The Commission certified the Pryor Facility as a QF by order dated July 28, 1983, in Docket No. QF83-242-000, and it currently retains QF status.[16] The Pryor Facility interconnects with the Public Service Company of Oklahoma ("PSO") transmission system. Pryor sells the electric output of the Pryor Facility to Oklahoma Gas and Electric Company and PSO, and the thermal output to Orchids Paper, Georgia-Pacific, the Oklahoma Ordinance Works Authority, Norit, GAP Roofing, and Solae. Pryor does not own or operate facilities for the transmission of electricity in interstate commerce other than interconnection facilities used solely to transmit power from the Pryor Facility to PSO's system.

V.  **REQUESTS FOR MARKET-BASED AUTHORITY FOR WHOLESALE SALES OF ENERGY, CAPACITY AND REPLACEMENT RESERVES**

Applicants request authority to make wholesale sales of energy, capacity and replacement reserves[17] at market-based rates for sales that will become subject to FPA Sections 205 and 206

---

[15] On January 31, 1997, Pine Bluff filed a notice of self-certification of QF status in Docket No. QF97-61-000. Pine Bluff filed notices of self-recertification on March 24, 1997 in Docket No. QF97-61-001 and on August 25, 1997 in Docket No. QF97-61-002. The Commission certified the Facility as a qualifying cogeneration facility on April 7, 1999. *Pine Bluff Energy LLC*, 87 FERC ¶ 62,031 (1999). Notices of Self-Recertification were also filed on August 18, 1999, in Docket No. QF97-61-005; on November 13, 2000, in Docket No. QF97-61-006; on December 19, 2000, in Docket No. QF97-61-007; and on October 31, 2001, in Docket No. QF97-61-008.

[16] *Oklahoma Ordinance Works Authority*, 24 FERC ¶ 62,120 (1983). On October 24, 1983, in Docket No. QF83-242-001, the Commission granted an application for recertification of the Facility as a QF. *Oklahoma Ordinance Works Authority*, 25 FERC ¶ 62,089 (1983). The Commission granted another application for recertification on November 4, 1983, in Docket No. QF83-242-002. *Energy Production and Investment Corp.*, 25 FERC ¶ 62,155 (1983). The Commission recertified the Facility on November 20, 1984, in Docket No. QF83-242-003. *EPIC Mid-America Corp.*, 29 FERC ¶ 62,167 (1984). Notices of self-recertification for the Facility were filed on October 16, 1987, in Docket No. QF83-242-004; on September 28, 1989, in Docket No. QF83-242-005; on December 22, 1997, in Docket No. QF83-242-006; on January 7, 1999, in Docket No. QF83-242-007; and on September 7, 2004, in Docket No. QF83-242-008.

[17] The Commission has determined that replacement reserves do not constitute a separate ancillary service but, rather, that the granting of market-based rate authority for sales of energy and capacity includes the granting of market-based rate authority for replacement reserves. *See Allegheny Energy Unit 1 and Unit*

due to the revised 18 C.F.R. §292.601(c)(1), i.e., those made by QFs pursuant to contracts executed after March 17, 2006, and not otherwise subject to a state regulatory authority's implementation of section 210 of the Public Utility Regulatory Policies Act of 1978. Commission policy permits such wholesale sales at market-based rates if the seller and its affiliates do not have, or have adequately mitigated, market power in generation and transmission and cannot erect other barriers to entry.[18] In addition, the Commission considers whether there is evidence of affiliate abuse or reciprocal dealing.[19] As demonstrated below, Applicants satisfy the relevant criteria and should be permitted to make wholesale sales of energy, capacity and replacement reserves at market-based rates.

### A. Applicants and Their Affiliates Lack Generation Market Power

In the May 13, 2004 "Order Implementing New Generation Market Power Analysis and Mitigation Procedures" ("May 13 Order"),[20] the Commission determined that public utilities submitting triennial market power updates must include a generation market power analysis pursuant to the two "indicative screens" adopted in *AEP Power Marketing, Inc. ("AEP")*.[21] The two indicative screens include an "uncommitted pivotal supplier" analysis and an "uncommitted market share" analysis. The pivotal supplier analysis determines whether the supplier and its affiliates can exercise market power in the relevant control area during the control area's annual peak demand. The market share analysis is applied to the control area on a seasonal basis to measure whether a supplier has a dominant position in the market.[22]

Also in *AEP*, the Commission reaffirmed the exemption from a generation market power analysis for recently constructed generation facilities: "[P]ursuant to section 35.27 of our regulations, as clarified by the Commission in subsequent orders, utilities meeting the criteria of that section shall not be required to demonstrate a lack of market power in generation with respect to sales from capacity for which construction commenced on or after July 9, 1996."[23] In the *AEP* order on rehearing,[24] the Commission clarified: "[I]n circumstances where construction on all of an applicant's generation commenced after July 9, 1996, no interim generation market power analysis need be performed."[25] Further, the Commission stated that for purposes of

---

[2], *L.L.C. et al.*, 89 FERC ¶ 61,272 at 61,790, n.2 (1999); *AES Redondo Beach, L.L.C., et al.*, 85 FERC ¶ 61,123 at 61,452, 61,464 (1998), *order on reh'g*, 87 FERC ¶ 61,208 (1999), *order on reh'g and clarification*, 90 FERC ¶ 61,036 (2000).

[18] Order No. 671; *Market-Based Rates For Public Utilities*, 107 FERC ¶ 61,019 (2004). *See also Huntington Beach Development, LLC*, 96 FERC ¶ 61,212 (2001), *reh'g denied*, 97 FERC ¶ 61,256 (2001) ("*Huntington Beach*"); *Heartland Energy Services, Inc.*, 68 FERC ¶ 61,223 (1994) ("*Heartland*").

[19] *Huntington Beach*, 96 FERC at 61,894; *Heartland*, 68 FERC at 62,062; *Kansas City Power & Light Co.*, 67 FERC ¶ 61,183 at 61,556-58 (1994).

[20] 107 FERC ¶ 61,168 (2004).

[21] 107 FERC ¶ 61,018, *order on rehearing*, 108 FERC ¶ 61,026 (2004).

[22] 107 FERC ¶ 61,018 at P 71.

[23] *Id.* at P 69.

[24] 108 FERC ¶ 61,026.

[25] *Id.* at P 110.

Unofficial FERC-Generated PDF of 20060322-0153 Received by FERC OSEC 03/16/2006 in Docket#: ER06-749-000

section 35.27, the relevant market is the control area in which an applicant's generation is located.[26]

On November 2, 2005, the Commission accepted for filing the joint triennial market power analysis of certain affiliates of the Applicants.[27] That filing contained a recent affidavit of Julie R. Solomon, an economist and Vice President at CRA International, in which Ms. Solomon applied the two indicative screens to every market in which any of Calpine's affiliates owns or controls generation, except those markets in which all of the Calpine-affiliated generation is exempt from the generation market power analysis. Ms. Solomon's analysis in that affidavit also applies to the Applicants and is presented in Attachment A hereto.

In her analysis, Ms. Solomon concludes that all Calpine affiliates, which include each of the Applicants, either are exempt from the generation market power analysis or pass both of the Commission's market power screens in every relevant market and therefore lack generation market power. Specifically, Ms. Solomon found that construction for each of the Carville Facility, Morgan Facility, Columbia Facility, and Pine Bluff Facility began after July 9, 1996, and no other Calpine-affiliated generation for which construction commenced prior to July 9, 1996 is located in the relevant control areas (i.e., Entergy Gulf States, TVA, SCEG, and Entergy Arkansas, Inc., respectively). Therefore, the Applicants that own or control generation in these control areas – Carville, Morgan, Columbia, and Pine Bluff, respectively – are exempt by regulation from the general requirement to demonstrate a lack of market power in generation in those control areas.

Construction on the Auburndale and Pryor generation facilities began prior to July 9, 1996, so Ms. Solomon conducted an analysis using the two indicative screens for all Calpine affiliates located in the TECO and Central and Southwest Services ("CSWS") control areas.

For the TECO control area, Ms Solomon's analysis shows that Auburndale's and its affiliates' uncommitted capacity is not needed to supply wholesale load in the TECO market,[28] and Auburndale's and its affiliates' market share in the TECO market is approximately 7-8 percent in every season, well below the 20 percent threshold.[29]

Ms. Solomon looked at the CSWS control area for Pryor and its affiliates and concluded that Pryor and its affiliates are not pivotal suppliers of wholesale load in CSWS,[30] and their market share in CSWS is no more than approximately 11 percent in every season, less than the 20 percent threshold.[31]

---

[26] *Id.* at P 111.

[27] *Creed Energy Center, LLC, Goose Haven Energy Center, LLC, Los Esteros Critical Energy Facility, LLC, and Calpine Northbrook Energy Marketing, LLC*, Docket Nos. ER02-2227-003, ER02-2229-002, ER03-24-003 and ER03-36-003 (issued Nov. 2, 2005).

[28] Attachment A at 13.

[29] *Id.* at 15.

[30] *Id.* at 12.

[31] *Id.* at 14.

For these reasons, the Applicants and their affiliates meet the applicable criteria and do not possess generation market power.

### B. Applicants and Their Affiliates Lack Transmission Market Power

Neither Applicants nor any of their affiliates owns or controls any transmission facilities other than generation interconnection facilities.[32] The Commission has ruled that generation interconnection facilities of this kind do not convey market power for purposes of market-based rate determinations.[33] Accordingly, Applicants and their affiliates cannot erect barriers to entry to the market by virtue of transmission market power.

### C. Applicants and Their Affiliates Cannot Erect Other Barriers to Entry

The Commission requires an applicant for market-based rates to show that it cannot erect barriers to entry by exercising control over resources such as potential generating sites or fuel supplies that would be required by potential future competitors.[34] In orders approving market-based rates for various other Calpine affiliates, the Commission found that these entities did not control barriers to entry.[35]

Neither Applicants nor their affiliates control any interstate fuel transportation systems that could be used to impede downstream generators from gaining access to lower-cost gas supplies in the relevant geographic markets. To the extent Applicants and their affiliates have contracts for firm, interstate and intrastate gas transportation to serve some of their generating plants, the amount of transportation capacity they control is small relative to the total physical capacity on the relevant pipelines. Finally, Applicants do not have dominant control over equipment supplies such as gas turbines.[36]

Based on these facts, Applicants and their affiliates cannot erect barriers to entry that would prevent competitors from participating in the relevant markets.

### D. Affiliate Abuse, Reciprocal Dealing and Code of Conduct

Neither Applicants nor any of their affiliates has a franchised service area for the sale of electricity to captive customers. Accordingly, Applicants request waiver of the Code of Conduct requirements. The Commission has routinely granted this waiver to other similarly-situated applicants.[37] Applicants will inform the Commission if one of them, or any of their affiliates, should acquire captive customers in the future.

---

[32] *Id.* at 15.

[33] *See, e.g., Iowa Power Partners I L.L.C.*, 81 FERC ¶ 61,058 (1997); *Vastar Res., Inc., et al.*, 81 FERC ¶ 61,135 (1997).

[34] *E.g., Heartland*, 68 FERC ¶ 61,223.

[35] *See* Footnote 10, *supra*.

[36] *See* Attachment A at 16-17.

[37] *See, e.g., Alcoa, Inc., et al.*, 88 FERC ¶ 61,045 (1999).

Unofficial FERC-Generated PDF of 20060322-0153 Received by FERC OSEC 03/16/2006 in Docket#: ER06-749-000
Case 1:07-cv-04709-LAK   Document 3-7   Filed 06/04/2007   Page 10 of 14

Honorable Magalie R. Salas
March 16, 2006
Page 9



## VI. REQUESTS FOR MARKET-BASED RATE AUTHORITY FOR ANCILLARY SERVICES

Applicants request authority to sell certain ancillary services at market-based rates within specified areas as described more fully herein.

### A. Requests for Market-Based Rate Authority for Ancillary Services as Authorized For Power Producers with Market-Based Rate Authority for Power Sales

Applicants request authority to sell certain ancillary services authorized for all power producers with market-based energy and capacity rate authority in the control areas of the California Independent System Operator Corporation ("CAISO") (i.e., sales to the CAISO or to others supplying ancillary services to the CAISO),[38] the Independent System Operator - New England, Inc. ("ISO-NE"),[39] PJM Interconnection, Inc. ("PJM"),[40] and the New York Independent System Operator ("NYISO").[41]

Each Applicant's rate schedule specifies the ancillary services that Applicant proposes to sell at market-based rates in each of the markets in which it requests authority to sell them consistent with applicable FERC precedents.[42] Accordingly, Applicants' requests for market-based rate authority to sell the specified ancillary services within the control areas of the CAISO, PJM, ISO-NE, and the NYISO as provided for in Applicants' rate schedules warrant approval.

Applicants also request authority to sell at market-based rates additional ancillary services and in other geographic markets as the Commission may specify and authorize from time to time in orders that extend such authority to all sellers previously authorized to sell energy and/or capacity at market-based rates. Applicants agree to satisfy the requirement to maintain current and complete tariffs on file with the Commission pursuant to 18 C.F.R. § 35.1.

---

[38] The Commission has granted blanket authority to sell Regulation Service, Spinning Reserve and Non-Spinning Reserve in the markets administered by the CAISO pursuant to *AES Redondo Beach, L.L.C., et al.*, 85 FERC ¶ 61,123, *order on reh'g*, 87 FERC ¶ 61,208 (1999).

[39] The Commission has granted blanket authority to sell Automatic Generation Control, Ten Minute Spinning Reserve, Ten Minute Non-Spinning Reserve and Thirty Minute Operating Reserve Services into the ISO-NE markets pursuant to *New England Power Pool*, 85 FERC ¶ 61,379 (1998).

[40] The Commission has granted blanket authority to sell Energy Imbalance and Operating Reserves Services into the markets administered by PJM, pursuant to *Atlantic City Electric Co., et al.*, 86 FERC ¶ 61,248, *clarified*, 86 FERC ¶ 61,310 (1999).

[41] The Commission has granted blanket authority to sell Regulation (load following service provided by generator with automatic generator control) and Operating Reserves Services (Ten Minute Spinning, Ten Minute Non-Spinning and Thirty Minute Operating Reserves) into NYISO markets pursuant to *Central Hudson Gas & Electric Corp., et al.*, 86 FERC ¶ 61,062, *order on reh'g*, 88 FERC ¶ 61,138 (1999).

[42] *See* notes 38-41, *supra*.

Honorable Magalie R. Salas
March 16, 2006
Page 10

## B. Requests for Flexible Rate Authority For Ancillary Services Pursuant to *Avista*

Applicants also request authority to make sales of certain ancillary services at market-based rates subject to the conditions set forth in *Avista Corporation* ("*Avista*").[43] In *Avista*, the Commission determined that where a seller that seeks to charge flexible rates for ancillary services is unable to perform a reliable market power analysis to show the seller lacks market power with respect to each ancillary service, the Commission will nonetheless authorize the seller to charge flexible rates for ancillary services if the seller (1) utilizes an internet-based site providing information regarding, and setting forth procedures under which purchasers can request service and make bids for ancillary services, and (2) complies with the Commission's market monitoring reporting requirements.[44]

Applicants are unable to obtain the factual data relating to the capabilities of other suppliers that is necessary to perform a reliable market power analysis for ancillary services outside of the CAISO, ISO-NE, NYISO and PJM markets. No regional transmission organization or independent system operator currently is operating outside of such regions and providing the necessary data to conduct such market power analysis. Nor is there any sort of power exchange through which energy, capacity or ancillary services are sold. Therefore, Applicants are unable to obtain the factual data relating to the ancillary service capabilities of other suppliers necessary to perform reliable market power analyses.

Applicants' rate schedules contain all of the limitations the Commission identified in *Avista* as necessary and appropriate for the market-based sale of ancillary services.[45] In addition, each of the Applicants commits to establish an internet-based site for providing information regarding ancillary services transactions prior to selling ancillary services at market-based rates in the relevant markets and to meet the reporting requirements set forth in *Avista*.[46] Therefore, the

---

[43] 87 FERC ¶ 61,223 (1999), *on reh'g,* 89 FERC ¶ 61,136 (1999); *see also Sempra Energy Trading Corporation*, 87 FERC ¶ 61,335 (1999). For sales of ancillary services made outside of the portion of the transmission grid controlled by the CAISO, ISO-NE, NYISO and PJM, Applicants seek to make available Regulation Service, Energy Imbalance Service, Spinning Reserves and Supplemental Reserves, subject to the applicable restrictions imposed by the FERC on such sales, as described herein.

[44] Specifically, the Commission requires the internet-based site to post, prior to making transactions, the types of services available and their offering prices, the actual transaction prices after the transactions are consummated and to include information about accepted and denied requests and the reasons therefore. The Commission also requires sellers to file with the Commission one year after the internet-based site is operational and at least every three years thereafter a report detailing the seller's activities in the ancillary services market. *Avista*, 87 FERC at 61,884 and 89 FERC at 61,391.

[45] Specifically, as described in *Avista*, Applicants' tariffs bar the sale of ancillary services in the following situations: (1) sales to a regional transmission organization such as an independent service operator or a transco, *i.e.*, where the RTO has no ability to self-supply ancillary services but instead depends on third parties; (2) sales to a traditional, franchised public utility affiliated with the third-party supplier, or sales where the underlying transmission is on the system of the public utility affiliated with the third-party supplier; and (3) sales to a public utility who is purchasing ancillary services to satisfy its own open access tariff requirements to offer ancillary services to its own customers. *Id.*, 87 FERC at 61,833 n.12.

[46] *See PG&E Dispersed Generating Co.*, Docket No. ER00-2134-000 (issued May 16, 2000).

Honorable Magalie R. Salas
March 16, 2006
Page 11

Commission should grant Applicants' requests to make sales of ancillary services at market-based rates pursuant to *Avista*.

## VII. REQUESTS FOR AUTHORITY TO REASSIGN TRANSMISSION CAPACITY

Applicants respectfully request authorization for reassignment of transmission capacity as authorized by the Commission in previous decisions.[47] Applicants' respective rate schedules include the conditions upon which Applicants may reassign transmission capacity. Each of the Applicant's proposed tariff provides that transmission capacity each Applicant has reserved for its own use may be reassigned at a price not to exceed the highest of: (1) the original rate paid by said Applicant; (2) the applicable transmission provider's maximum stated firm transmission rate on file at the time of the transmission reassignment; or (3) said Applicant's opportunity costs, capped at the applicable transmission provider's cost of expansion at the time of the sale to the eligible customer. Neither one of the Applicants will recover opportunity costs without making a separate filing under Section 205 of the FPA. Each of the Applicants commits to reporting the name of the assignee of transmission capacity in its quarterly reports.

## VIII. REQUESTS FOR AUTHORITY TO BUY AND RESELL FIRM TRANSMISSION RIGHTS

Applicants request authorization to buy and resell Firm Transmission Rights ("FTRs") to the same extent the Commission authorized in *California Independent System Operator Corporation* (the "CAISO Order")[48] and other decisions.[49] Applicants have included in each of their rate schedules the conditions that the Commission determined in the CAISO Order must be attached to resale of FTRs.

Applicants desire to be able to participate fully in the energy marketplace, and to that end anticipate a future interest in buying and reselling FTRs as they become available on a number of transmission systems. Applicants have accordingly structured the scope of their respective rate schedules to apply for authority to buy and resell FTRs. The Commission has accepted identical language in the tariffs of other market-based power producers.[50]

## IX. REQUESTS FOR WAIVERS

Consistent with the Commission's regulations as revised by Order No. 671, Applicants will remain exempt from all sections of the FPA except those sections identified in 18 C.F.R. § 292.601(c). Accordingly, Applicants will remain exempt from the requirements of Parts 34

---

[47] *See Enron Power Mktg.*, 81 FERC ¶ 61,277 (1997).

[48] 89 FERC ¶ 61,153 (1999), *order on reh'g*, 94 FERC ¶ 61,343 (2001).

[49] *See, e.g., Nine Mile Point Nuclear Station, LLC*, 95 FERC ¶ 61,202 (2001); *Nine Mile Point Nuclear Station, LLC*, Docket No. ER01-1654-001 (issued Aug. 10, 2001); *Gilroy Energy Center, LLC, supra*.

[50] *See Gilroy Energy Center, LLC, supra*.

Unofficial FERC-Generated PDF of 20060322-0153 Received by FERC OSEC 03/16/2006 in Docket#: ER06-749-000

and 45 of the Commission's regulations.[51]  Applicants agree to submit Electric Quarterly Reports pursuant to Order No. 2001.[52]

To the extent necessary, Applicants request the same waivers of other Commission regulations that the Commission has granted to other applicants requesting market-based rate authority.[53] Specifically, Applicants request:

- Waiver of the accounting and reporting requirements contained in Parts 41, 101 and 141 of the Commission's regulations;[54] and

- Waiver of Subparts B and C of Part 35 of the Commission's regulations, except for sections 35.12(a), 35.13(b), 35.15 and 35.16.[55]

## X. REQUESTS FOR WAIVER OF PRIOR NOTICE REQUIREMENT

Because Applicants submit this application in compliance with Order No. 671, Applicants request an effective date for their respective rate schedules consistent with the Commission's February 10, 2006 Order on Clarification of Order No. 671.[56]  In the February 10, 2006 order, the Commission granted waiver of the 60-day prior notice requirement to QFs that file their market-based rate applications prior to the effective date of Order No. 671 and established the effective date for such market-based rate schedules as the effective date of Order No. 671.[57]  The effective date of Order No. 671 is March 17, 2006.  Therefore, Applicants request an effective date for the Applicants' rate schedules of March 17, 2006.

---

[51] 18 C.F.R. Pts. 34, 45.

[52] *Revised Public Utility Filing Requirements*, "Notice," Docket No. RM01-8-000 at P 28 (issued Oct. 21, 2002) ("some utilities with a QF exemption have a Part 35 tariff on file with the Commission, in which case transactions under that tariff are reportable").

[53] *See, e.g., Front Range Associates, LLC*, 88 FERC ¶ 61,047 at 61,126 (1999).

[54] 18 C.F.R. Pts. 41, 141.

[55] 18 C.F.R. §§ 35.12(a), 35.13(b), 35.15, 35.16.

[56] *Revised Regulations Governing Small Power Production and Cogeneration Facilities*, 114 FERC ¶ 61,128.

[57] *Id.* at P 3.

Unofficial FERC-Generated PDF of 20060322-0153 Received by FERC OSEC 03/16/2006 in Docket#: ER06-749-000
Case 1:07-cv-04709-LAK    Document 3-7    Filed 06/04/2007    Page 14 of 14

Honorable Magalie R. Salas
March 16, 2006
Page 13

## XI. CONCLUSION

Applicants respectfully request that the Commission issue an order accepting for filing Applicants' rate schedules and granting the requested waivers, including the waiver of the 60-day notice period. If you have any questions concerning this filing, please do not hesitate to contact the undersigned.

Respectfully submitted,

*James B. Vasile*

James B. Vasile

Attorneys for Carville Energy LLC
        Morgan Energy Center, LLC
        Columbia Energy LLC
        Pine Bluff Energy, LLC
        Auburndale Power Partners, L.P.
        CPN Pryor Funding Corporation

Attachments