**EXHIBIT D**

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

April 6, 2007

<u>VIA HAND DELIVERY</u>

Ms. Philis J. Posey
Acting Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426

        Re:    South Carolina Electric & Gas Company
                Docket No. ER03-1398-___
                <u>Compliance Filing</u>

Dear Ms. Posey:

      Pursuant to Section 205 of the Federal Power Act ("FPA"), 16 U.S.C. § 824d,[1] and the Federal Energy Regulatory Commission's ("FERC" or "Commission") March 7, 2007 order in this proceeding, 118 FERC ¶ 61,185 (2007) ("March 2007 Order"), South Carolina Electric & Gas Company ("SCE&G"), hereby submits this filing in compliance with the Commission's directives in the March 2007 Order. Enclosed herewith are an original and five (5) copies of the compliance filing and other materials as required by the March 2007 Order and the Commission's regulations.

      SCE&G submits for the Commission's acceptance the Construction and Maintenance Agreement Between South Carolina Electric & Gas Company and Columbia Energy LLC ("C&M Agreement"), revised pursuant to the March 2007 Order to reflect: (1) the application of transmission credits to charges for service using those facilities that the Commission determined to be network upgrades in its prior order in this proceeding, *South Carolina Electric & Gas Company*, 106 FERC ¶ 61,265 (2004) ("March 2004 Order"); (2) the inclusion in those required credits of any tax gross-up or other tax-related payments associated with the network upgrades; (3) the assignability of the right to credits; and (4) the application of those transmission credits and interest until such time as SCE&G has made a full offset, with interest, of all amounts paid for the upgrades by Columbia Energy LLC ("Columbia"), a subsidiary of Calpine Corporation

---

[1] Because this filing is made pursuant to FPA Section 205, SCE&G anticipates that the Commission will issue an order within 60 days of the date of this filing. FPA Section 205(c) requires that public utilities file "all rates and charges for any transmission or sale subject to the jurisdiction of the Commission . . . together with all [related] contracts[.]" 16 U.S.C. § 824d(c). As the Commission has noted, interconnection is an element of transmission service and is required to be provided pursuant to the Commission's *pro forma* tariff. *See, e.g., Tennessee Power Company*, 90 FERC ¶ 61,238 at 61,761, *reh'g dismissed*, 91 FERC ¶ 61,271 (2000).

WAI-2821763v2
858430 - 030001

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Ms. Philis J. Posey  
April 6, 2007  
Page 2

JONES DAY

("Calpine"). Such revisions, together with the explanations in this letter, implement the Commision's directives in the March 2007 Order.

The Commission also directed SCE&G to provide a description of each of its transmission service agreements "with Columbia." March 2007 Order at P 47. SCE&G does not have, and never has had, any transmission service agreements with Columbia. Columbia sells the output from the Columbia Energy Center to its affiliated marketer, Calpine Energy Services L.P. ("CES"), also a Calpine subsidiary.[2] As between these two affiliates, CES, as the purchaser of its fellow Calpine affiliate's generation output, is the entity that makes the necessary arrangements for the transmission of that power. In 2001, CES entered into two service agreements with SCE&G – one for firm point-to-point transmission service and the other for non-firm point-to-point transmission service ("Service Agreements"). The agreements conform to the forms of service agreement contained in SCE&G's open-access transmission tariff ("OATT") and allow CES to make firm and non-firm transmission service reservations through SCE&G's Open Access Same-Time Information System ("OASIS"). Pursuant to such agreements, CES made short- and long-term reservations for service from the Columbia Energy Center, including four 103 MW reservations for long-term firm service made prior to the May 2004 start of commercial operation of the Columbia Energy Center and initially set to begin January 1, 2004 ("Long Term Reservations").[3]

As part of this compliance filing SCE&G demonstrates that, with the contract changes addressed herein, SCE&G has satisfied all of the obligations imposed by the Commission in both the March 2004 Order and the March 2007 Order, including complete payment of all of the credits required by the Commission. SCE&G's issuance of credits is consistent with the March 2004 Order, SCE&G's filing in compliance with that order, the Commission's crediting policy and Columbia's own request that the C&M Agreement be further revised to allow for the assignment of credits.

---

[2] *See* Columbia's application for market-based rate authority, which stated that Columbia "sells the [Columbia Energy Center's] electric output to CES and thermal output to Eastman Chemical Company." *See* March 16, 2006 filing submitted in Docket No. ER06-741-000, transmittal letter at page 4. Such application was granted by unpublished letter order on April 24, 2006.

[3] Service pursuant to CES' Long-Term Reservations was to commence on January 1, 2004 and to terminate on January 1, 2005. Pursuant to Section 17.7 of the SCE&G OATT, CES was entitled to, and on two occasions did, defer commencement of the Long-Term Reservations to the next calendar year by paying a deferral fee, as required by the OATT. In 2005, CES did not defer the reservations for another calendar year through payment of the fee and the Long-Term Reservations commenced on January 1, 2006.

WAI-2821763v2  
858430 - 030001

Ms. Philis J. Posey                                                                                 JONES DAY
April 6, 2007
Page 3

## I. BACKGROUND

### A. The C&M Agreement

Pursuant to FPA Section 205, on September 29, 2003, as supplemented on November 4, 2003, SCE&G filed the executed C&M Agreement. The March 2004 Order accepted the C&M Agreement subject to SCE&G making certain modifications. The Commission found that certain facilities, referred to as the "Narrow U Facilities," were network upgrades and that "their cost must be repaid, over time, to Columbia by SCE&G granting Columbia credits against the transmission rates paid by Columbia to SCE&G." March 2004 Order at P 20. On April 21, 2004, SCE&G filed under protest a revised C&M Agreement ("Revised C&M Agreement") that included a new Section 7.2.1 providing credits for the cost of network upgrades in compliance with the March 2004 Order.[4]

On May 12, 2004, Columbia filed a protest to SCE&G's compliance filing ("May 2004 Protest") requesting that the Commission require SCE&G to make certain further modifications to the Revised C&M Agreement including that "Columbia may assign its rights to the credits and repayment rights to any person."[5]

On the same day that SCE&G submitted its compliance filing, SCE&G sought rehearing of the March 2004 Order, and requested, among other relief, that SCE&G be permitted to directly assign, as provided in the original C&M Agreement, the costs of the interconnection facilities constructed by SCE&G to interconnect the Columbia Energy Center with SCE&G's transmission system.

Nearly three years after SCE&G sought rehearing of the March 2004 Order and filed the Revised C&M Agreement in compliance with that order, and after SCE&G had fully credited to CES the cost of the network upgrades with interest, the Commission issued the March 2007

---

[4] Section 7.2.1 of the Revised C&M Agreement provides:

Credits for Transmission Facility Upgrades Required for Interconnection. Customer shall be entitled to transmission credits, equal to the total amount paid to SCE&G for the Transmission Facility Upgrades Required for Interconnection, on a dollar-for-dollar basis for the non-usage sensitive portion of transmission charges, as payments are made under SCE&G's OATT for transmission services with respect to Customer's device that utilizes the Transmission Facility Upgrades Required for Interconnection. Transmission credits shall be applied until such time as the cost of the Transmission Facility Upgrades Required for Interconnection have been fully offset, after which time such offset or credits shall no longer apply. Alternatively, SCE&G may, at its sole discretion, choose to repay to Customer any amounts advanced by Customer for Transmission Facility Upgrades Required for Interconnection not credited to Customer at any time. Any credits shall include interest calculated in accordance with the methodology set forth in FERC's regulations from the date of the payment for the Transmission Facility Upgrades Required for Interconnection until the date the credit is applied.

[5] Protest of Columbia Energy LLC to Filing of South Carolina Electric & Gas Company filed on May 12, 2004 in Docket No. ER03-1398 at pp 5-6.

Order, denying SCE&G's rehearing request and accepting the Revised C&M Agreement subject to further modification as directed in the order. The instant filing is made in compliance with the directives of the March 2007 Order.

### B. Transmission Service Agreements

As noted above, Columbia has never requested transmission service on SCE&G's transmission system and has taken no steps to become a customer eligible for service under SCE&G's OATT. Since the start of the Columbia Energy Center's commercial operation in May 2004 through the present, CES has been the only affiliate of Columbia (*i.e.*, the only Calpine subsidiary) to reserve capacity from the facility.

In compliance with the Commission's March 2004 Order, the Revised C&M Agreement, Commission policy requiring that credits for network upgrades be applied only against charges for transmission from the facility causing the upgrades,[6] and Columbia's own request to be able to assign its right to credits, SCE&G began applying credits against transmission charges incurred by CES for its May 2004 transmission service from the Columbia Energy Center.[7] On June 9, 2004, before sending CES its first invoice, SCE&G assured Columbia via electronic mail that SCE&G would issue credits "on a dollar for dollar basis against [the] non-usage sensitive portion of the transmission charges, as payments are made under SCE&G's Tariff for transmission services with respect to the Generating Facilities connected to the [network upgrades]." That communication also included an invoice for the balance that Columbia owed to SCE&G for the interconnection facilities. Besides paying the balance owed, Columbia made no reply regarding SCE&G's crediting approach presumably because SCE&G's assurance that dollar-for-dollar credits would be applied commensurately with transmission payment accorded not only with Columbia's arrangements with its affiliate CES, whereby CES would take transmission from the Columbia Energy Center, but also with Columbia's express request in its May 2004 Protest that the credits be assignable. SCE&G thus issued credits to CES between

---

[6] In Order No. 2003-A, the Commission revised the Large Generator Interconnection Agreement to prohibit the use of credits for transmission service unrelated to the facility causing the network upgrades so that generators would have the appropriate incentive in making facility siting decisions. *See Standardization of Generator Interconnection Agreements and Procedures*, Order No. 2003, FERC Stats. & Regs. ¶ 61,146 (2003), *reh'g*, Order No. 2003-A, FERC Stats. & Regs. ¶ 61,160 at PP 614-15 (2004), *reh'g*, Order No. 2003-B, FERC Stats. & Regs. ¶ 31,171 (2005), *reh'g*, Order No. 2003-C, FERC Stats. & Regs. ¶ 31,190 (2005) (stating "it is appropriate that credits be given only for transmission service that includes the Generating Facility as the source of the power transmitted."); *see also Duke Energy Corporation*, 94 FERC ¶ 61,187 at 61,659 (2001) (stating "[t]he purpose of the credit is to compensate the generator for the costs of network upgrades once it begins to take transmission service. While the credit may be transferred to a customer taking network service, the credit is nonetheless appropriately tied to the specific generator.").

[7] SCE&G's invoices to CES for each month of service during the period of May 2004 through September 2006 included this transmission credit as a line item. The invoices' description of the credit varied during that period to include the terms "Credit – FERC Identified Network Upgrades at Columbia Energy Center," "Credit – FERC Identified Network Upgrade" and "FERC Identified Network Credit." In this way, SCE&G demonstrated to CES with each invoice that CES was receiving the credits that had been ordered by the Commission.

May 2004 and September 2006. As of the September 2006 invoice, SCE&G had issued credits in the amount of $5,090,089.94, which equals the full amount funded by Columbia, with interest. *See* spreadsheet at Attachment A showing credits issued by month.

On December 20, 2005 ("Petition Date"), Calpine and its subsidiary companies, including Columbia and CES, filed a voluntary petition for Chapter 11 bankruptcy protection.[8] In August 2006, after SCE&G had issued credits to CES for over two years, Columbia, by way of an email from one of its attorneys, asserted that SCE&G had "mistakenly appropriated" such credits by granting them to CES instead of Columbia. The attorney asked to be advised as to when SCE&G would "turnover the property" of the Columbia estate. In that correspondence, the attorney also indicated a willingness to discuss payment of "CES obligations," a reference to charges incurred by CES for transmission service from the Columbia Energy Center that CES had not paid, as described below.[9]

Shortly after Calpine and its subsidiaries Columbia and CES had filed under Chapter 11, SCE&G sought adequate assurance of payment for postpetition transmission services provided to CES. Despite a May 12, 2006 letter in which CES asserted that it had determined that the "Firm Point-to-Point Transmission Agreement out of the Columbia Energy Center" provided no benefit to CES' bankruptcy estate and that CES "releases and relinquishes any right to ongoing service or capacity under the Contract,"[10] CES has not sought approval of either the bankruptcy court or the FERC to reject or terminate its Service Agreements. Therefore, pursuant to the applicable provisions of the OATT, SCE&G remained obligated to provide service pursuant to those agreements, including the reservation of capacity pursuant to the Long Term Reservations, and CES remained obligated to pay SCE&G for such service and reservation charges, including the Long-Term Reservations.

As of the date of this filing, CES has made over 600 reservations, including the Long Term Reservations, under the Service Agreements since the Petition Date. However, with the exception of one payment in the amount of $158,430.46 received by SCE&G in May 2006, CES has failed to pay its monthly invoices from SCE&G during the postpetition period. As a result, CES currently owes SCE&G $3,381,468.95 on account of reservation charges and transmission service provided to CES since the Petition Date (the "Unpaid Postpetition Obligations"), taking into account the credits granted by SCE&G. Despite CES' nonpayment, SCE&G has upheld its

---

[8] *In re: Calpine Corporation, et al.*, Case No. 05-60200 (Bankr. S.D.N.Y., voluntary petition filed Dec. 20, 2005).

[9] In August 2006, SCE&G was informed by the individuals handling payment of CES' invoices that they were instructed by CES' attorneys to withhold payment until Columbia's assertion that SCE&G improperly applied credits to CES was resolved.

[10] The letter, which was signed by Rodney Malcolm, Executive Vice President of CES, and describes CES as a debtor-in-possession in Calpine's bankruptcy proceeding, appears to be an attempt by CES to repudiate its FERC-jurisdictional agreement and payment obligations under SCE&G's OATT.

WAI-2821763v2
858430 - 030001

obligation to provide service pursuant to the Service Agreements, including reserving capacity according to the Long Term Reservations.

SCE&G has made repeated attempts to seek payment from CES of the Unpaid Postpetition Obligations, to no avail. By letter dated February 8, 2007, SCE&G made a demand for payment of the Unpaid Postpetition Obligations in an attempt to avoid having to seek relief from the bankruptcy court. Because CES failed to pay the Unpaid Postpetition Obligations pursuant to that demand, on February 15, 2007, SCE&G filed with the bankruptcy court a motion ("Bankruptcy Motion") for an order (a) compelling payment of postpetition obligations; (b) determining adequate assurance of future performance; and (c) granting relief from the automatic stay imposed by operation of Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, to allow SCE&G to pursue its rights at the Commission, including SCE&G's right to seek authority to terminate service to CES.[11] The Bankruptcy Motion currently is scheduled to be heard by the bankruptcy court on May 9, 2007.

## II. SCE&G'S COMPLIANCE WITH THE MARCH 2004 ORDER

Columbia argued in its May 2004 Protest that it was entitled to credits in the amount that it paid to SCE&G for the cost of the network upgrades. In the March 2004 Order, the Commission directed SCE&G to repay the cost of the network upgrades to Columbia by "granting credits against the transmission rates paid by Columbia to SCE&G." March 2004 Order at P 20. However, as noted earlier, Columbia itself, as opposed to its affiliate CES, has never been a transmission customer of SCE&G and has done nothing to indicate its intent to become a customer eligible for service under SCE&G's OATT. Thus, Columbia has never paid transmission rates against which SCE&G could issue such credits. SCE&G, in compliance with the Commission's directive to issue credits against transmission rates, began issuing such credits to CES, the entity buying the power generated at the Columbia Energy Center and reserving transmission capacity from the facility, as soon as the facility was commercially operational. As of CES' September 2006 invoice, SCE&G had issued credits in the amount of $5,090,089.94 (see Attachment A), the full amount funded by Columbia, with interest. SCE&G's issuance of credits is consistent with the March 2004 Order, the Revised C&M Agreement, the Commission's crediting policy and Columbia's own request in its May 2004 Protest that the Revised C&M Agreement be revised to allow for the assignment of credits.

SCE&G's crediting of CES' reservation charges is consistent with the Commission's interconnection pricing policy, which is intended to (1) ensure that a generator will not be charged twice (through both incremental expansion costs and embedded costs with expansion costs rolled in) for the use of the transmission system with which it interconnects; (2) ensure that a generator's interconnection is treated comparably to the interconnections that a transmission

---

[11] SCE&G reserves the right to seek relief from the Commission regarding CES' Unpaid Postpetition Obligations, which include reservation charges for the Long-Term Reservations.

Ms. Philis J. Posey  
April 6, 2007  
Page 7

JONES DAY

provider completes for its own generating facilities; and (3) enhance competition in bulk power markets by promoting the construction of new generation facilities. Order No. 2003 at P 694; *see also Entergy Services, Inc. v. FERC*, 319 F.3d 536, 543 (D.C. Cir. 2003), *quoting Entergy Services, Inc.*, 96 FERC ¶ 61,311 at 62,203 (2001) (stating that the Commission's crediting policy is intended to "place[] new generators on an equal footing with pre-existing generators owned by utilities.")

By issuing credits against CES' rates for transmission service taken from the Columbia Energy Center, SCE&G ensured that the power from those generators would not be disadvantaged in comparison to other generation connected to SCE&G's system. As a result, the Columbia Energy Center was placed on an equivalent competitive footing with existing generation on SCE&G's system, thereby receiving the benefit that the Commission's policy intends to achieve.

The Commission's crediting policy requires that credits for network upgrades be tied to transmission service from the generating facility necessitating the network upgrades.[12] For example, in *Duke Energy Corporation*, 94 FERC ¶ 61,187 at 61,659 (2001) the Commission stated "[t]he purpose of the credit is to compensate the generator for the costs of network upgrades once it begins to take transmission service. While the credit may be transferred to a customer taking network service, the credit is nonetheless appropriately tied to the specific generator." In Order No. 2003-A, the Commission concluded that "it is appropriate that credits be given only for transmission service that includes the Generating Facility as the source of the power transmitted." Order No. 2003-A at P 614. Because CES takes transmission service from the Columbia Energy Center and Columbia does not, CES is the appropriate entity to receive the transmission credits. Because Columbia has not taken transmission service from the Columbia Energy Center, Columbia has never been eligible to receive transmission credits directly.

SCE&G's crediting also was consistent with Section 7.2.1 of the Revised C&M Agreement, which provides that "Customer shall be entitled to transmission credits, equal to the total amount paid to SCE&G for the Transmission Facility Upgrades Required for Interconnection, on a dollar-for-dollar basis for the non-usage sensitive portion of transmission charges, as payments are made under SCE&G's OATT for transmission services with respect to Customer's device that utilizes the Transmission Facility Upgrades Required for Interconnection."[13] Thus, under the Revised C&M Agreement, Columbia was "entitled" to transmission credits. Columbia, as noted, expressly sought authorization to assign that

---

[12] The Commission has recognized that the owner of the generating facility is "rarely the customer that takes transmission delivery service." Order No. 2003-A at P 676.

[13] Although Section 7.2.1 allows SCE&G "at its sole discretion" to "choose to repay to Customer any amounts advanced by Customer for Transmission Facility Upgrades Required for Interconnection not credited to Customer at any time," it does not require SCE&G to pay credits directly to Columbia, nor does it entitle Columbia to any reimbursement other than transmission credits as payments are made under SCE&G's OATT for transmission services with respect to the Columbia Energy Center.

WAI-2821763v2  
858430 - 030001

entitlement, presumably because Columbia was not itself a transmission customer. Through the arrangement whereby CES made transmission reservations for Columbia Energy Center power, SCE&G fully honored Columbia's entitlement by means of the payment of credits to CES. This crediting mechanism likewise honored Columbia's request for assignability of the crediting entitlement and the commercial relationship between the two Calpine affiliates – the one selling power and the other buying that power and arranging transmission. Because Columbia knew that CES was receiving the transmission credits for service taken from the generators, Columbia could take such credits into account in its arrangement with CES for the purchase of power from the facility. The reduction in transmission rates that CES received as a result of the credits made the power generated at the facility more valuable than if CES had to pay full transmission charges. As such, Columbia could sell the power to CES at a higher rate commensurate with the reduction in transmission charges and thereby receive the economic benefit of its entitlement to transmission credits without having to transmit the power itself.

### III.    DESCRIPTION OF FILING

#### A.    Revisions to the Revised C&M Agreement

Pursuant to the directives in the March 2007 Order, SCE&G has made the following revisions to Section 7.2.1 of the Revised C&M Agreement and provides the following explanations:

1.    The March 2007 Order directed SCE&G to further modify the Revised C&M Agreement to reflect the order's discussion concerning the eligibility for transmission revenue credits as between reserved capacity associated with the two generators that utilize the network upgrades and the generator that does not. March 2007 Order at PP 45-47. The order discusses two possible scenarios: (1) the customer taking service from the Columbia Energy Center is required to designate two receipt points in its transmission service agreement – one for the two generators that utilize the network upgrades and one for the generator that does not; or (2) all three generators are deemed to be located at the same receipt point such that the customer need designate only that single point to transmit the output from any or all of the generators. *Id.* at PP 45-46. In the case of the Columbia Energy Center, a transmission customer need designate only a single point as the source of the power.

SCE&G was obligated to issue credits pursuant to the Revised C&M Agreement. Accordingly, SCE&G applied credits against transmission service from the generators connected to the network upgrade facilities. SCE&G applied credits on a percentage basis based on the metered use of the network upgrade facilities so that if in a particular month 20% of the Columbia Energy Center's output flowed over the network upgrade facilities, SCE&G credited 20% of CES' total transmission bill for that month. Where there was a reservation for service but no metered use, *i.e.*, the Long-Term Reservations, then CES received a credit equal to 70% of its total charge for such reservation because the capacity of the generators that utilize the network upgrades represents 70% of the Columbia Energy Center's total capacity.

WAI-2821763v2
858430 - 030001

Between the time that the Revised C&M Agreement was filed and the issuance of the March 2007 Order, SCE&G fully credited the cost of the network upgrades with interest. SCE&G believes such crediting is consistent with the discussion in the March 2007 Order. *See* March 2007 Order at PP 45-47. SCE&G has modified the Revised C&M Agreement to clarify the way in which SCE&G applied the credits.

In connection with its crediting discussion, the March 2007 Order directed SCE&G "to provide a description of each of [SCE&G's] transmission service agreements with Columbia . . ." *Id.* at P 47. SCE&G believes that the discussion above and in Section II.B satisfies this directive. However, to the extent the Commission would like additional information, SCE&G will supply such information promptly.

2. The March 2007 Order directed SCE&G to repay any tax gross-up or other tax related payments and to modify the Revised C&M Agreement accordingly. *Id.* at PP 48, Ordering Para. (C). SCE&G has modified the Revised C&M Agreement to include tax gross-up language consistent with Section 11.4.1 of the Commission's *pro forma* Large Generator Interconnection Agreement ("LGIA") and the language suggested by Columbia in its May 2004 Protest. However, because SCE&G did not include any tax gross-up or other tax-related costs in its calculation of the amount Columbia owed for the construction of the network upgrades, no adjustment to the total amount of credits is necessary as a result of this change to the language of the Revised C&M Agreement.

3. The March 2007 Order directed SCE&G "to allow the assignment of repayment rights." *Id.* at P 48. SCE&G has modified the Revised C&M Agreement to include language to allow the assignment of the credits consistent with Section 11.4.1 of the LGIA and the language suggested by Columbia in its May 2004 Protest. Although this language was not included in the Revised C&M Agreement, the lack of such language did not hinder Columbia's ability to assign its right to the transmission credits. In fact, as noted, SCE&G's issuance of credits to CES was consistent with Columbia's request in its May 2004 Protest to be able to assign the credits.

4. The March 2007 Order directed that the Revised C&M Agreement be revised "to make clear that transmission revenue credits and interest shall be applied until such time as all amounts funded by Columbia for network upgrades have been fully offset with interest." *Id.* at P 49. In fact, all amounts funded by Columbia, including interest, have been repaid in the form of transmission credits. Nevertheless, to comply in full with the Commission's order, SCE&G has modified the Revised C&M Agreement to clarify that transmission credits and interest shall be available until such time as the amounts funded by Columbia for network upgrades have been fully offset. SCE&G's modification is consistent with the language suggested in Columbia's May 2004 Protest.

B. **Documents Submitted**

In addition to Attachment A, described above, which shows credit amounts SCE&G provided to CES by month, SCE&G is submitting the following documents as part of this filing:

     1.    Second Substitute Original Service Agreement No. 101, as modified in compliance with the March 2007 Order, excluding exhibits (Attachment B); and

     2.    Redlined sheets showing changes from the Substitute Service Agreement (referred to herein as the Revised C&M Agreement) (Attachment C).

### C.    Miscellaneous

A copy of this filing has been provided to counsel representing both Columbia and CES and to all parties on the service list maintained by the Secretary in this proceeding. Consistent with the March 2004 Order and the March 2007 Order, the effective date of the Second Substitute Original Service Agreement No. 101 is November 15, 2003. SCE&G respectfully requests waiver of any of the Commission's regulations necessary to permit this compliance filing to be accepted as filed.

Communications regarding this filing should be addressed to the following individuals, who should be entered on the official service list maintained by the Secretary of the Commission for each docket established with respect to this filing:

| | |
|---|---|
| Catherine D. Taylor<br>South Carolina Electric & Gas Company<br>1426 Main Street<br>Columbia, South Carolina 29201<br>Tel: (803) 217-9356<br>cdtaylor@scana.com | Kevin J. McIntyre<br>Amy W. Beizer<br>Jones Day<br>51 Louisiana Avenue, NW<br>Washington, DC 20001<br>Tel: (202) 879-3939<br>kjmcintyre@jonesday.com<br>awbeizer@jonesday.com |
| Charles A. White<br>South Carolina Electric & Gas Company<br>1426 Main Street<br>Columbia, South Carolina 29201<br>Tel: (803) 217-9518<br>cwhite@scana.com | |

## IV. CONCLUSION

Wherefore, SCE&G respectfully requests that the Commission accept this filing in compliance with the March 2004 and March 2007 Orders.

If you have any questions or need further information, please contact the undersigned.

Respectfully submitted,

Kevin J. McIntyre  
Amy W. Beizer

Attorneys for South Carolina Electric & Gas Company

Enclosures

cc: Iskender H. Catto, Esq. (Counsel for Columbia and CES) (via electronic mail)  
Service List (via electronic mail)

WAI-2821763v2  
858430 - 030001

# ATTACHMENT A

SPREADSHEET SHOWING CREDITS PAID

| Work Order # | In-Service Date | Description | Total CIAC Amount | Direct Assignment For 230Kv | Adjustment To Work Orders |
|---|---|---|---|---|---|
| 400426 | 7/31/2003 | Wateree - Den Ter 230KV Fold-In to CEC | 2,888,176.77 | 0.56 | 353,750.75 | 2,534,426.02 |
| 400427 | 6/30/2003 | CEC - 230KV Fold-In ROW | 61,392.42 | 0.01 | 7,519.49 | 53,872.93 |
| 400492 | 8/31/2003 | CEC - Edenwood 230 Kv Raise Str | 135,383.69 | 0.03 | 16,582.12 | 118,801.57 |
| 500346 | 6/12/2003 | Wateree - Replace Panel | 19,814.40 | 0.00 | 2,426.91 | 17,387.49 |
| 500352 | 6/12/2003 | CEC - Construct Switchyard | 2,017,039.05 | 0.39 | 247,051.73 | 1,769,987.32 |
|  |  |  | 5,121,806.33 | 1.00 | 627,331.00 | (174,494,475.33) |

| | |
|---|---|
| Credit to deferred credit with offset entry to capital work orders | (4,494,475.33) |
| JV reduced amount of CIAC to the above work orders - Booked March 2004 | - |
|  | - |
| Interest accrued on individual work orders back to in | - |
|   service dates - Booked in March 2004 | (377,618.00) |
| April's Interest Calculation and correction | 228,435.00 |
| May's Interest Calculation | (15,478.86) |
| May's Transmission Credits | 12,801.05 |
| June's Interest Calculation | (15,487.79) |
| June's Transmission Credits | 89,641.14 |
| July's Interest Calculation | (15,240.61) |
| July's Transmission Credits | 234,351.02 |
| August Interest Calculation | (14,510.24) |
| August Transmission Credits | 168,391.82 |
| September Interest Calculation | (15,746.96) |
| September Transmission Credits | 82,956.05 |
| October Interest Calculation | (16,355.76) |
| October Transmission Credits | 32,098.13 |
| November Interest Calculation | (14,407.00) |
| November Transmission Credits | 9,802.00 |
| December Interest Calculation | (14,422.95) |
| December Transmission Credits | 48,976.52 |
| January 05 Interest Calculation | (16,174.90) |
| January 05 Transmission Calculation | 81,131.42 |
| February 05 Interest Calculation | (15,917.78) |
| February 05 Transmission Calculation | 55,083.22 |
| March 05 Interest Calculation | (15,762.75) |
| March 05 Transmission Calculation | 108,357.00 |
| April 05 Interest Calculation | (17,178.95) |
| April 05 Transmission Calculation | 3,594.28 |
| May 05 Interest Calculation | (17,238.95) |
| May 05 Transmission Calculation | 4,518.36 |
| June 05 Interest Calculation | (17,295.14) |
| June 05 Transmission Calculation | 15,846.36 |
| July 05 Interest Calculation | (18,835.82) |
| July 05 Transmission Calculation | 137,767.67 |
| August 05 Interest Calculation | (18,232.30) |
| August 05 Transmission Calculation | 167,970.14 |
| September 05 Interest Calculation | (17,543.97) |
| September 05 Transmission Calculation | 45,645.92 |
| October 05 Interest Calculation | (18,796.55) |
| October 05 Transmission Calculation | - |
| November 05 Interest Calculation | (18,894.31) |
| November 05 Transmission Calculation | - |
| December 05 Interest Calculation | (18,992.40) |
| December 05 Transmission Calculation | - |
| January 06 Interest Calculation | (20,776.41) |
| January 06 Transmission Calculation | 369,668.24 |
| February 06 Interest Calculation | (18,805.17) |
| February 06 Transmission Calculation | 369,668.24 |
| March 06 Interest Calculation | (16,822.79) |
| March 06 Transmission Calculation | 369,668.24 |
| April 06 Interest Calculation | (15,966.56) |
| April 06 Transmission Calculation | 369,668.24 |
| May 06 Interest Calculation | (13,814.87) |
| May 06 Transmission Calculation | 383,618.30 |
| June 06 Interest Calculation | (11,565.24) |
| June 06 Transmission Calculation | 468,424.31 |
| July 06 Interest Calculation | (9,315.58) |
| July 06 Transmission Calculation | 629,524.79 |
| August 06 Interest Calculation | (5,315.23) |
| August 06 Transmission Calculation | 591,277.96 |
| September 06 Interest Calculation | (1,535.77) |
| September 06 Transmission Calculation | 369,668.24 |
| September 06 Transmission Calculation | (130,028.72) |
| Balance in 253.0033    Total: | (0.00) |
|    GL: | - |
|    Difference | (0.00) |

**Calpine Credits & Interest - Pre and Post Petition**

| | **Calpine Pre-Petition Credits** | | **Calpine Pre-Petition Interest** | |
|---|---|---|---|---|
| 2004 | | | Accrued prior to March 2004 | $ (377,618.00) |
| | | | April's Interest Calculation & correction | $ 228,435.00 |
| | May-04 | $ 12,801.05 | | $ (15,478.86) |
| | June-04 | $ 89,641.14 | | $ (15,487.79) |
| | July-04 | $ 234,351.02 | | $ (15,240.61) |
| | August-04 | $ 168,391.82 | | $ (14,510.24) |
| | September-04 | $ 82,956.05 | | $ (15,746.96) |
| | October-04 | $ 32,098.13 | | $ (16,355.76) |
| | November-04 | $ 9,802.00 | | $ (14,407.00) |
| | December-04 | $ 48,976.52 | | $ (14,422.95) |
| 2005 | January-05 | $ 81,131.42 | | $ (16,174.90) |
| | February-05 | $ 55,083.22 | | $ (15,917.78) |
| | March-05 | $ 108,357.00 | | $ (15,762.75) |
| | April-05 | $ 3,594.28 | | $ (17,178.95) |
| | May-05 | $ 4,518.36 | | $ (17,238.95) |
| | June-05 | $ 15,846.36 | | $ (17,295.14) |
| | July-05 | $ 137,767.67 | | $ (18,835.82) |
| | August-05 | $ 167,970.14 | | $ (18,232.30) |
| | September-05 | $ 45,645.92 | | $ (17,543.97) |
| | October-05 | $ - | | $ (18,796.55) |
| | November-05 | $ - | | $ (18,894.31) |
| | December-05 | $ - | | $ (18,992.40) |
| | | $ 1,298,932.10 | | $ (481,696.99) |

| | **Calpine Post-Petition Credits** | | **Calpine Post-Petition Interest** | |
|---|---|---|---|---|
| 2006 | January-06 | $ 369,668.24 | | $ (20,776.41) |
| | February-06 | $ 369,668.24 | | $ (18,805.17) |
| | March-06 | $ 369,668.24 | | $ (16,822.79) |
| | April-06 | $ 369,668.24 | | $ (15,966.56) |
| | May-06 | $ 383,618.30 | | $ (13,814.87) |
| | June-06 | $ 468,424.31 | | $ (11,565.24) |
| | July-06 | $ 629,524.79 | | $ (9,315.58) |
| | August-06 | $ 591,277.96 | | $ (5,315.23) |
| | September-06 | $ 239,639.52 | | $ (1,535.77) |
| | October-06 | $ - | | |
| | November-06 | $ - | | |
| | December-06 | $ - | | |
| | | $ 3,791,157.84 | | $ (113,917.62) |

| | | | | |
|---|---|---|---|---|
| **Total Credits Issued** | $ 5,090,089.94 | | **Total Interest Accrued** | $ (595,614.61) |

|  |  |
|---|---|
| Transmission C | 5,090,089.94 |
| Interest | (595,614.61) |
|  | 4,494,475.33 |

# ATTACHMENT B

CONSTRUCTION AND MAINTENANCE AGREEMENT
BETWEEN SOUTH CAROLINA ELECTRIC AND GAS COMPANY
AND COLUMBIA ENERGY LLC – CLEAN VERSION

WAI-2821682v1

SOUTH CAROLINA ELECTRIC & GAS COMPANY     Second Substitute Original Service
FERC Electric Tariff                                                                     Agreement No. 101
Second Revised Volume No. 5

CONSTRUCTION AND MAINTENANCE AGREEMENT
BETWEEN
SOUTH CAROLINA ELECTRIC AND GAS COMPANY
AND
COLUMBIA ENERGY LLC

Issued by: Charles A. White                                   Effective Date: November 15, 2003
Issued on: April 6, 2007
Filed to comply with order of the Federal Energy Regulatory Commission, Docket Nos. ER03-1398-003, *et. al.*, *South Carolina Electric & Gas Company*, 118 FERC ¶ 61,185 (March 7, 2007)

CONSTRUCTION AND

MAINTENANCE AGREEMENT

FOR INTERCONNECTION FACILITIES

By and Between


COLUMBIA ENERGY LLC

And

SOUTH CAROLINA ELECTRIC & GAS CO.


Dated as of May 8, 2001

WAI-2821673v1

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Article I | Definitions | 4 |
| Article II | Term Termination, Service and Changes | 10 |
| Article III | Interconnection Facilities | 11 |
| Article IV | Metering, Metered Data and Communications | 15 |
| Article V | Testing | 16 |
| Article VI | Interconnection Requirements and Maintenance | 16 |
| Article VII | Payment and Security Requirements | 19 |
| Article VIII | Tax Liability and Security | 23 |
| Article IX | Force Majeure | 26 |
| Article X | Assignment | 27 |
| Article XI | Liability and Indemnification | 29 |
| Article XII | Insurance | 31 |
| Article XIII | Notices | 32 |
| Article XIV | Preservation of Books and Records | 34 |
| Article XV | Representations and Warranties | 34 |
| Article XVI | Dispute Resolution | 36 |
| Article XVII | Severability and Renegotiation of Material Provisions | 37 |
| Article XVIII | Miscellaneous | 38 |

-3-

## Exhibits

| | |
|---|---|
| Exhibit 1 | Interconnection Study |
| Exhibit 2 | Work Plan, Deliverables and Monthly Status Reports |
| Exhibit 3 | Generator Capacity Curves |
| Exhibit 4 | Testing of the Interconnection Facilities |
| Exhibit 5 | Metering Pulse Agreement |
| Exhibit 6 | Interconnection Facilities |
| Exhibit 7 | Security Schedule |

# CONSTRUCTION AND MAINTENANCE AGREEMENT FOR INTERCONNECTION FACILITIES

This Agreement is made this 8th day of May, 2001 (the "Effective Date"), by and between Columbia Energy LLC, a Delaware limited liability company with a principal place of business at 650 Dundee Road, Suite 350, Northbrook, IL 60062 ("Customer"), and South Carolina Electric & Gas Co. ("SCE&G"), a South Carolina corporation with a principal place of business at 1426 Main Street, Columbia, SC 29201.

## WITNESSETH

WHEREAS, Customer intends to construct, own and operate the Facility (as defined in Article I) in Calhoun County, South Carolina, for the generation and sale of electric energy and steam; and

WHEREAS, SCE&G has performed, at Customer's request, a Feasibility Study dated September 3, 1999 that demonstrates a need for new facilities to interconnect the Facility with SCE&G's Transmission System; and SCE&G has performed, at Customer's request, an Interconnection Study dated August 11, 2000 and an amended Interconnection Study dated December 22, 2000 (Exhibit 1) that more thoroughly analyze the required construction effort for SCE&G's Interconnection Facilities and associated equipment, including the cost and description of SCE&G's Interconnection Facilities; and

WHEREAS, Customer desires to have SCE&G provide for the design, engineering, procurement, construction and commissioning of SCE&G's Interconnection Facilities and to provide for the maintenance thereof, in accordance with the terms of this Agreement; and

WHEREAS, Customer is entering into the Operating Agreement with SCE&G concurrently herewith and intends to enter into separate agreement(s) for the provision of transmission service.

NOW THEREFORE, in consideration of and subject to the mutual covenants contained herein the receipt, sufficiency and adequacy of which are hereby acknowledged, Customer and SCE&G agree as follows:

## ARTICLE I
## DEFINITIONS

The following capitalized terms, whether in the singular or the plural or in the present or past tense, shall have the meanings set forth below whenever such terms appear in this Agreement.

"AAA" shall have the meaning given to it in Section 16.2.