**EXHIBIT A**

JONES DAY
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Michael J. Templeton (MT 8709)
Ross S. Barr (RB 3685)

    and

77 West Wacker
Chicago, IL 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Mark A. Cody (*pro hac vice*)
Robert E. Krebs (*pro hac vice*)

Counsel to South Carolina Electric & Gas Company

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Calpine Corporation, et al., ) | |
|     Debtors. ) | Case No. 05-60200 (BRL) |
| _____ ) | (Jointly Administered) |
| Columbia Energy LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| South Carolina Electric & Gas Company ) | |
| ) | Adv. Pro. No. 07-1694 |
| Defendant. ) | |
| ) | |
| _____ ) | |

**ANSWER OF DEFENDANT SOUTH CAROLINA ELECTRIC & GAS COMPANY**

        Defendant South Carolina Electric & Gas Company (the "SCE&G"), by and

through its undersigned counsel, and for its answer (the "Answer") to the Complaint

(the "Complaint") of plaintiff Columbia Energy LLC ("Columbia"), one of the debtors and

debtors-in-possession (collectively, the "Debtors") in the above-captioned jointly administered

Chapter 11 cases, responds as to itself upon personal knowledge, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

The claims alleged in the Complaint relate to an ongoing dispute between Columbia and SCE&G concerning the application of certain credits against the rates for electric transmission service provided by SCE&G. The dispute between the parties regarding the proper application of the transmission credits has been pending before the Federal Energy Regulatory Commission (the "FERC") for nearly four years, and it involves complex non-bankruptcy law issues under (a) the Federal Power Act, 16 U.S.C. et. seq. (the "FPA"), (b) certain orders and directives issued by the FERC, and (c) FERC regulated agreements between the parties. In the Complaint, however, Columbia attempts to characterize its alleged claims as matters of contract interpretation and bankruptcy law. Contrary to Columbia's assertions, its alleged claims are not simply matters of contract interpretation and application of bankruptcy law, and instead involve substantial non-bankruptcy issues of federal law. As a result of the significant non-title 11 federal law issues presented by allegations in the Complaint, in addition to the response to the Complaint set forth in this Answer, SCE&G is filing a motion for the entry of an order withdrawing the reference to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of this Adversary Proceeding.

## ANSWER

1. Denies the allegations of paragraph 1, except admits that plaintiff's Complaint in this Adversary Proceeding purports to seek declaratory relief and certain other alleged claims for relief, and purports to bring this Adversary Proceeding under the particular rules of the Federal Rules of Bankruptcy Procedure cited in paragraph 1; and in further response denies that plaintiff is entitled to any relief sought in the Complaint.

    2. Denies the allegations of paragraph 2, except admits that the FERC issued an Order on March 22, 2004 (the "March 2004 Order"), in which the FERC found that certain facilities that were constructed to interconnect certain Columbia generating facilities to SCE&G's transmission system were "network upgrades;" and in further response states that the March 2004 Order provided in part that their cost must be repaid over time by SCE&G in the form of "credits against the transmission rates paid by Columbia to SCE&G;" and refers to the March 2004 Order for the complete contents thereof.

    3. Denies the allegations of paragraph 3.

    4. Denies the allegations of paragraph 4.

    5. In response to the allegations of paragraph 5, SCE&G admits that on December 20, 2005, Calpine Corporation ("Calpine") and its subsidiaries, including Columbia and Calpine Energy Services, L.P. ("CES"), commenced their respective reorganization cases in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

    6. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6.

    7. Admits the allegations of paragraph 7.

    8. Denies the allegations of paragraph 8.

    9. Denies the allegations of paragraph 9; and in further response states that the FERC is the proper forum to determine the parties' rights regarding the application of the transmission credits.

    10. Denies the allegations of paragraph 10, except admits that plaintiff purports to base its alleged claims for relief on the statutes and rule cited in paragraph 10.

11.     Denies the allegations of paragraph 11, except admits that in 2001, Columbia began construction of a new electric generation facility, located in Calhoun County, South Carolina; admits that SCE&G owns and operates the electricity transmission system in the area around the Columbia generating facility; admits that SCE&G and Columbia entered into certain agreements relating to the interconnection of the Columbia generating facility with the SCE&G transmission system; avers that among those agreements is the Construction and Maintenance Agreement for Interconnection Facilities, dated as of May 8, 2001 (the "C&M Agreement"); further avers that the C&M Agreement set forth the terms and conditions of the interconnection of Columbia's electric generation facilities to SCE&G's transmission system; and refers to the C&M Agreement for the complete and stated terms and contents thereof.

12.     Denies the allegations of paragraph 12, except admits that a dispute arose between the parties in connection with a motion to intervene and protest filed with the FERC by Columbia in response to SCE&G's filing with the FERC of the C&M Agreement, which was executed by both parties, in which Columbia requested that the FERC find that certain facilities, referred to as "Narrow U Facilities" or "U Facilities" were "network upgrades"; and in further response states that consistent with FERC policy, costs for network upgrades must be repaid through credits against transmission rates for service from the generating facility requiring the network upgrades.

13.     Denies the allegations of paragraph 13, except admits that in its March 2004 Order, the FERC found that certain facilities, referred to as the "Narrow U Facilities" or "U Facilities," were "network upgrades;" admits that the March 2004 Order states in part that "their cost must be repaid, over time, to Columbia by SCE&G granting Columbia credits against the

transmission rates paid by Columbia to SCE&G;" and refers to the March 2004 Order for the complete contents thereof.

        14.      Denies the allegations of paragraph 14.

        15.      Denies the allegations of paragraph 15, except admits that on April 21, 2004 SCE&G submitted its compliance filing under protest and in response to the directives in the FERC's March 2004 Order, and that such compliance filing included a revised version of the C&M Agreement (the "Revised C&M Agreement"); admits that the Revised C&M Agreement included a new Section 7.2.1; and refers to SCE&G's compliance filing and the Revised C&M Agreement, including Section 7.2.1 of the Revised C&M Agreement, for the complete terms and contents thereof.

        16.      Denies the allegations of paragraph 16, except admits that SCE&G submitted its compliance filing in response to the March 2004 Order under protest and as a separate filing requested rehearing of the March 2004 Order; states that the allegations of the second sentence of paragraph 16 contain a legal conclusion to which no responsive pleading is required; admits that the FERC issued its "Order on Rehearing and Compliance Filing" on March 7, 2007 (the "March 2007 Order"), which denied SCE&G's rehearing request and accepted the Revised C&M Agreement subject to certain further modification as directed in the March 2007 Order; and refers to the March 2007 Order for the complete contents thereof.

        17.      Denies the allegations of paragraph 17, and avers that the parties dispute the amount of transmission credits that were owed and the interest accrual as to that amount.

        18.      In response to the allegations of paragraph 18, SCE&G states on information and belief that Columbia sells the output of its generating facility to CES and that CES coordinates the sale of electricity and all associated transmission services from the

Columbia generating facility and other Calpine generation-owning subsidiaries; admits that in 2001, CES entered into two service agreements with SCE&G – one for firm point-to-point transmission service (the "Firm Service Agreement") and the other for non-firm point-to-point transmission service (the "Non-Firm Service Agreement" and together with the Firm Service Agreement, the "Service Agreements"); avers that these Service Agreements conform to the forms of the service agreement contained in SCE&G's open-access transmission tariff ("OATT"); admits that the Service Agreements allowed CES to make firm and non-firm transmission service reservations through SCE&G's Open Access Same-Time Information System ("OASIS"); refers to the Firm Service Agreement and the Non-Firm Service Agreement for the complete content thereof; and otherwise denies the allegations of paragraph 18.

    19.  Denies the allegations of paragraph 19, except admits that typically parties who hold firm and/or non-firm transmission service agreements and make reservations pursuant to those agreements are charged reservation charges regardless of whether they schedule transmission under those reservations; and avers that the terms and conditions of the firm and non-firm transmission service that SCE&G provides are set forth in the SCE&G OATT.

    20.  Denies the allegations of paragraph 20, except admits that pursuant to the Firm Service Agreement, CES entered into four 103 MW long-term reservations with SCE&G for firm transmission service originating at the Columbia generating facility (the "Long-Term Reservations"); refers to the Long-Term Reservations for the complete contents thereof; admits that pursuant to the Long-Term Reservations service was initially to commence on January 1, 2004 and to terminate on January 1, 2005; admits that CES had the ability to defer commencement of the Long-Term Reservations to the next calendar year by paying a deferral fee in accordance with applicable provisions of SCE&G's OATT; and admits that the Long-Term

Reservations for firm transmission service ultimately commenced on January 1, 2006 and terminated on January 1, 2007.

21. Denies the allegations of Paragraph 21, except admits that pursuant to the Long-Term Reservations, CES was required to pay monthly charges for the firm 412 MW long term reservations of transmission service, which SCE&G continued to provide to CES as required by the Long-Term Reservations; admits that for the term of the Long Term Reservations CES was invoiced on a monthly basis by SCE&G for the firm 412 MW transmission services provided by SCE&G to CES in accordance with the Long-Term Reservations; admits that CES did not schedule transmission service under the Long-Term Reservations although it had the ability to do so; and avers that although CES did not schedule any transmission service under such reservations, SCE&G was obligated to and in fact did reserve for CES the 412 MW of capacity pursuant to the Long Term Reservations, making that capacity unavailable for other's use on SCE&G's transmission system.

22. Denies the allegations of paragraph 22, except admits that CES posted a letter of credit, dated August 20, 2003, in the amount of $528,097.48 pursuant to the requirements under the SCE&G OATT.

23. Denies the allegations of paragraph 23.

24. Denies the allegations of paragraph 24.

25. Denies the allegations of paragraph 25.

26. Denies the allegations of paragraph 26, except admits that on February 15, 2007, SCE&G filed a motion in the Bankruptcy Court which, among other relief, sought payment by CES as an administrative expense of amounts owed by CES to SCE&G on account

of reservation charges and transmission services provided to CES post-petition, and refers to that motion for the complete contents thereof.

27. Denies the allegations of paragraph 27.

28. Denies the allegations of paragraph 28, except admits that CES made reservations through OASIS pursuant to the Firm and Non-Firm Service Agreements; admits that CES made such reservations during the months May, June, July and August 2006; and admits that SCE&G invoiced CES for such service pursuant to the SCE&G OATT.

29. Denies the allegations of paragraph 29, except admits that Open Access Technology International, Inc. ("OATI"), as SCE&G's OASIS services provider, provides the electronic platform for the utilization of SCE&G's OASIS for purposes of reserving capacity and scheduling transmission services and that OATI assigns specific numbers to each reservation of capacity; and denies knowledge or information sufficient to form a belief as to the truth thereof as to the allegations of the third sentence of paragraph 29.

30. Denies the allegations of paragraph 30.

31. Denies the allegations of paragraph 31; except admits that CES sent a letter dated May 12, 2006 addressed to SCE&G; refers to the May 12, 2006 letter of CES for the complete contents thereof; avers that CES has not sought approval of either the Bankruptcy Court or the FERC to reject or terminate the Service Agreements; and further avers that pursuant to applicable provisions of the OATT, SCE&G remained obligated to provide service pursuant to the Service Agreements, including the reservation of capacity pursuant to the Long-Term Reservations, and CES remained obligated to pay SCE&G for such service and reservations charges, including the Long-Term Reservations.

32. Denies the allegations of paragraph 32.

33. Denies the allegations of paragraph 33.

34. Denies the allegations of paragraph 34, except admits that SCE&G filed a motion in the Bankruptcy Court on February 15, 2007 for an Order compelling the payment of postpetition obligations, determining assurance of future performance, and granting relief from the automatic stay, and refers to that motion filed by SCE&G for the complete contents thereof.

35. Denies the allegations of paragraph 35, and avers that pursuant to section 205 of the FPA and the FERC's March 2007 Order, SCE&G submitted its filing in compliance with the FERC's directives in its March 2007 Order on April 6, 2007; and refers to that compliance filing for the complete contents thereof.

36. Denies the allegations of paragraph 36, and avers that pursuant to section 205 of the FPA and the FERC's March 2007 Order, SCE&G submitted its filing in compliance with the FERC's directives in its March 2007 Order on April 6, 2007; and refers to that compliance filing for the complete contents thereof.

37. Denies the allegations of paragraph 37.

38. Denies the allegations of paragraph 38.

39. In response to paragraph 39, SCE&G repeats and realleges and incorporates by reference its response to each allegation set forth above.

40. Denies the allegations of paragraph 40, and avers that the FERC is the proper forum to determine the parties' rights regarding the application of the transmission credits.

41. Denies the allegations of paragraph 41, and avers that the FERC is the proper forum to determine the parties' rights regarding the application of the transmission credits.

42. Denies the allegations of paragraph 42.

43. Denies the allegations of paragraph 43.

44. In response to paragraph 44, SCE&G repeats and realleges and incorporates by reference its response to each allegation set forth above.

45. Denies the allegations of paragraph 45.

46. Denies the allegations of paragraph 46.

47. Denies the allegations of paragraph 47.

48. Denies the allegations of paragraph 48.

49. Denies the allegations of paragraph 49.

50. In response to paragraph 50, SCE&G repeats and realleges and incorporates by reference its response to each allegation set forth above.

51. Denies the allegations of paragraph 51.

52. Denies the allegations of paragraph 52.

53. Denies the allegations of paragraph 53.

54. Denies the allegations of paragraph 54.

55. Denies the allegations of paragraph 55, and in further response avers that Columbia has received the economic benefit of the transmission credits as a result of the arrangement between Columbia and CES.

56. In response to the allegations of paragraph 56, SCE&G states that it is aware that Calpine and its subsidiaries, including Columbia and CES, filed their respective reorganization cases under chapter 11 of the Bankruptcy Code; and otherwise denies the allegations of paragraph 56.

57. Denies the allegations of paragraph 57.

58. In response to paragraph 58, SCE&G repeats and realleges and incorporates by reference its response to each allegation set forth above.

59. Denies the allegations of paragraph 59.

60. Denies the allegations of paragraph 60.

61. Denies the allegations of paragraph 61.

62. Denies the allegations of paragraph 62.

63. Denies the allegations of paragraph 63.

64. Denies that Columbia is entitled to any of the relief requested in the prayer for relief in the Complaint.

65. Denies each and every allegation of the Complaint that is not expressly admitted herein, including any allegations that may be included in any of the headings to any of the particular sections of the Complaint.

66. Denies that Columbia is entitled to any of the relief sought in the Complaint.

67. SCE&G reserves its rights to assert any and all counterclaims, including the proofs of claim filed in the above-captioned chapter 11 cases, any and all claims asserted in the Motion of South Carolina Electric & Gas Company for an Order (a) Compelling Payment of Postpetition Obligations, (b) Determining Adequate Assurance of Future Performance and (c) Granting Relief from Automatic Stay filed in the Bankruptcy Court on February 15, 2007 [D.I. 3687], and any and all other claims, including any administrative expense claims for postpetition liabilities relating to transactions that are the subject of allegations in this Adversary Proceeding and any related transactions, documents or agreements.

**FIRST DEFENSE**

68. The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

69. The Court lacks subject matter jurisdiction over the claims alleged in the Complaint.

## THIRD DEFENSE

70. Plaintiff's claims are barred by the failure to join an indispensable party.

## FOURTH DEFENSE

71. Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, estoppel, waiver and unclean hands.

## RESERVATION OF RIGHTS AND DEFENSES

72. SCE&G reserves the right to assert and rely on any other applicable defenses as may become available or apparent during discovery proceedings or otherwise in this proceeding; and reserves the right to amend its answer and/or defenses accordingly.

WHEREFORE, Defendant South Carolina Electric & Gas Company demands judgment in its favor and against Plaintiff, dismissal of the Complaint with prejudice, and an award of such other and further relief as the Court may deem just and equitable.

Dated: May 31, 2007 Respectfully submitted,

  /s/ Michael J. Templeton
Michael J. Templeton (MT 8709)
Ross S. Barr (RB 3685)
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

-and-

Mark A. Cody (*pro hac vice*)
Robert Krebs (*pro hac vice*)
JONES DAY
77 West Wacker
Chicago, Illinois  60601
(312) 782-3939

ATTORNEYS FOR DEFENDANT
SOUTH CAROLINA ELECTRIC & GAS
COMPANY