**EXHIBIT B**

614rsoum.txt
```
                                                          1
     614rsoum
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   In Re CALPINE CORPORATION, et al.
 3
 4   ------------------------------x
 4
 5   SOUTHERN CALIFORNIA EDISON
 5   COMPANY, et al.,
 6
 6            v.                         05 Civ. 10842 (RCC)
 7
 7   CALPINE CORPORATION, et al.,
 8                                       Argument on Motion
 8            Defendants.
 9
 9   ------------------------------x
10                                       New York, N.Y.
10                                       January 4, 2006
11                                       3:30 p.m.
11   Before:
12
12         HON. RICHARD CONWAY CASEY
13                                       District Judge
13
14
14            APPEARANCES
15
15   MUNGER, TOLLES & OLSON LLP
16   Attorneys for Southern California Edison Company
16        355 South Grand Avenue, 35th floor
17        Los Angeles, California  90071
17        (213) 683-9201
18   BY:  MARK SHINDERMAN, ESQ.
18
19   STEPTOE & JOHNSON LLP
19   Attorneys for Southern California Edison Company
20        1330 Connecticut Avenue, NW
20        Washington, D.C.  20036
21        (202) 429-6254
21   BY:  DAVID B. RASKIN, ESQ.
22
22   HOGAN & HARTSON LLP
23   Attorneys for Southern California Edison Company
23        875 Third Avenue
24        New York, New York  10022
24        (212) 918-8256
25   BY:  DAVID M. POSNER, ESQ.
25
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
                                                          2
     614rsoum
 1            APPEARANCES
 2
 2   PIERCE ATWOOD LLP
 3   Attorneys for California Department of Water Resources and
 3   California Electricity Oversight Board
 4        One Monument Square
 4        Portland, Maine  04101
```
                         Page 1

```
                                  614rsoum.txt
     5          (207) 791-1187
     5   BY:  KEITH J. CUNNINGHAM, ESQ.
     6        JARED S. des ROSIERS, ESQ.
     6
     7   LUSKIN, STERN & EISLER LLP
     7   Attorneys for California Department of Water Resources,
     8   California Electricity Oversight Board, and Attorney General of
     8   the State of California
     9        330 Madison Avenue
     9        New York, New York  10017
    10        (212) 293-2700
    10   BY:  MICHAEL LUSKIN, ESQ.
    11
    11   DEWEY BALLANTINE LLP
    12   Attorneys for Pacific Gas & Electric Company
    12        1301 Avenue of the Americas
    13        New York, New York  10017
    13        (212) 259-8000
    14   BY:  DIANNE F. COFFINO, ESQ.
    14
    15   McGUIREWOODS LLP
    15   Attorneys for Strategic Energy LLC and Northern California
    16   Power Agency
    16        1345 Avenue of the Americas, 7th Floor
    17        New York, New York  10105
    17        (212) 548-2100
    18   BY:  PATRICK L. HAYDEN, ESQ.
    18
    19   KIRKLAND & ELLIS LLP
    19   Attorneys for Calpine Corporation
    20        655 Fifteenth Street, N.W.
    20        Washington, D.C.  20005
    21        (202) 879-5050
    21   BY:  JEFFREY S. POWELL, ESQ.
    22        MATTHEW D. CANTOR, ESQ.
    22
    23   NICOLE GUERON, ESQ.
    23   Attorney for Federal Energy Regulation Commission
    24        U.S. Department of Justice
    24        33 Whitehall Street
    25        New York, New York  10004
    25        (212) 637-2699
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    3
         614rsoum
     1          (Case called)
     2          THE CLERK:  Counsel, please identify yourselves for
     3   the record.
     4          MR. SHINDERMAN:  Your Honor, Mark Shinderman, Munger,
     5   Tolles & Olson, on behalf of Southern California Edison
     6   Company, plaintiff and movant.
     7          THE COURT:  Good afternoon, Mr. Shinderman.
     8          MR. RASKIN:  Your Honor, David Raskin, Steptoe &
     9   Johnson, for plaintiff-movant Southern California Edison
    10   Company.
    11          THE COURT:  Mr. Raskin, good afternoon.
    12          MR. POSNER:  Good afternoon, your Honor.  David
    13   Posner, Hogan & Hartson, for Southern California Edison
    14   Company.
    15          THE COURT:  Mr. Posner, good afternoon.
    16          MR. CUNNINGHAM:  Good afternoon, your Honor.  Keith
    17   Cunningham from Pierce Atwood, for the Southern California
                                  Page 2
```

614rsoum.txt
18  Department of Water Resources and California Electricity
19  Oversight Board.
20          MR. LUSKIN:  Your Honor, Michael Luskin, Luskin, Stern
21  & Eisler, for the California parties, that is, the California
22  Department of Water Resources, the California Electricity
23  Oversight Board, and the Attorney General of the State of
24  California.
25          THE COURT:  Good afternoon, sir.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                4
    614rsoum
 1          MS. COFFINO:  Good afternoon, your Honor.  Diane
 2  Coffino from Dewey Ballantine LLP on behalf of Pacific Gas &
 3  Electric company.
 4          THE COURT:  Good afternoon.
 5          MR. HAYDEN:  Good afternoon, your Honor.  Patrick
 6  Hayden of McGuireWoods representing Strategic Energy LLC and
 7  Northern California Power Agency.  We have filed a joinder in
 8  the motions of the other parties here.
 9          THE COURT:  Good afternoon.
10          MR. CANTOR:  Good afternoon, your Honor.  Matthew
11  Cantor, Kirkland & Ellis, on behalf of Calpine Corporation.  I
12  would like to introduce my partner, Jeffrey Powell, also of
13  Kirkland & Ellis.  I would also like to move his admission pro
14  hac vice.  He is a member in good standing of the bars of
15  Illinois and the District of Columbia.  I have his pro hac
16  motion prepared with a certificate of good standing that we are
17  ready to file.
18          MR. POWELL:  Good afternoon, your Honor.
19          THE COURT:  Your application is granted.  Go ahead and
20  file the papers to complete it.  Thank you.
21          MR. POWELL:  Thank you, your Honor.
22          MR. LUSKIN:  Your Honor, may I be heard on a pro hac
23  motion as well?  Michael Luskin.  I would like to move the pro
24  hac motions of Keith Cunningham, who introduced himself, and
25  his partner Jared des Rosiers, who is here in this courtroom.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                5
    614rsoum
 1  They are here from the Pierce Atwood firm in Portland, Maine.
 2  They are in good standing and are in the process of filing the
 3  necessary fee.  Also, on the phone are Martin Goyette, who is
 4  the supervising deputy attorney general of the State of
 5  California, and Irene Tamura, a deputy attorney general.  Both
 6  attorneys are in good standing in the State of California.  I
 7  move their admission.  Their papers are also in the works and
 8  payment of their fees is being made.
 9          THE COURT:  Your applications are granted.
10          MR. LUSKIN:  Thank you, your Honor.
11          THE COURT:  Is there anyone else?
12          MR. POSNER:  Your Honor, David Posner again, from
13  Hogan & Hartson, for Southern California Edison Company.  Mr.
14  Shinderman and Mr. Raskin have already introduced themselves on
15  behalf of Southern California Edison Company.  Mr. Shinderman
16  is a member of the bar of California in good standing, and Mr.
17  Raskin is a member of the bar of the District of Columbia in
18  good standing.  We will be filing the appropriate papers and
19  filing the necessary fees.  I would move their admission pro
20  hac as well, your Honor.
21          THE COURT:  Your application is granted.  If it gets
22  any larger, we are going to have to make up programs, I think.
                            Page 3

614rsoum.txt
```
23          Everybody is on the record now?  All right.
24          Before we get started, who will be arguing for the
25     movants and how much time?  I wasn't informed that anybody
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```
                                                                  6
```
       614rsoum
 1     called in with any desired time for their argument.
 2          MR. SHINDERMAN:  Your Honor, Mark Shinderman of
 3     Munger, Tolles & Olson.  On behalf of the plaintiff movants, I
 4     will start.  I require approximately 10 to 15 minutes, probably
 5     10 minutes.
 6          THE COURT:  That shows good judgment.  If that doesn't
 7     send a little hint to the rest, then they shouldn't be here.
 8          MR. SHINDERMAN:  Seven minutes, your Honor.
 9          THE COURT:  You are getting dearer to my heart every
10     minute.
11          MR. SHINDERMAN:  Following me, your Honor, California
12     would like to be heard as well as PG&E.  I will let Mr.
13     Cunningham and Ms. Coffino indicate how long they anticipate.
14          MR. CUNNINGHAM:  Keith Cunningham for Department of
15     Water Resources and Electricity Oversight Board.  I would
16     expect that we would take up no more than five minutes, and I
17     will certainly try and move that closer to one or two or three
18     minutes as we go along.
19          THE COURT:  Duplication doesn't score anything with
20     me, so hit the points you want to make.  Go ahead.  That will
21     be fine.  It will be just the two of you then?
22          MS. COFFINO:  Diane Coffino from Dewey Ballantine on
23     behalf of Pacific Gas & Electric Company.  We will be arguing
24     as well, but we will try to keep it to under five minutes,
25     maybe three if possible, to move things along.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```
                                                                  7
```
       614rsoum
 1          THE COURT:  It is wonderful as to how it spreads.
 2     Now I have to hear from Kirkland & Ellis?
 3          MR. SHINDERMAN:  Yes, sir.  Jeff Powell on behalf of
 4     the debtors, your Honor, and I have just dramatically lowered
 5     the time estimate.
 6          THE COURT:  Oh, you're quick.  They always said that
 7     about you.
 8          MR. POWELL:  I am editing as I speak.  I think ten
 9     minutes will be fine.
10          THE COURT:  Fine.  Good people, who will lead off?
11          MR. SHINDERMAN:  Your Honor, again, Mark Shinderman,
12     Munger, Tolles & Olson, Southern California Edison Company.
13          THE COURT:  It is in your court.
14          MR. SHINDERMAN:  Your Honor, thank you for considering
15     the motion to withdraw on short notice.  As you know, the
16     debtor, Calpine, filed a motion to reject certain contracts
17     that provide purchase of electricity generated from the
18     debtors.  These contracts constitute rates filed with and
19     subject to the jurisdiction of the Federal Energy Regulatory
20     Commission.
21          Resolution of the rejection motion requires, as a
22     predicate, a court to crease two related questions.  First, in
23     what form should the motion be resolved?  Second, and depending
24     on the answer to the first, what standards should be applied?
25          To answer these two questions, the Court must
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                              Page 4
```

614rsoum.txt

8

614rsoum
1  necessarily consider both the Federal Power Act and the
2  bankruptcy code.  As such, under 28 U.S.C. Section 157,
3  withdrawal of the reference is mandatory.
4          If it is OK with you, your Honor, I wish to provide a
5  brief factual background and then a legal analysis to help
6  frame our discussion.
7          The facts are simple and are not in dispute.  Just
8  prior to Calpine's filing bankruptcy on December 19, 2005, the
9  California Department of Water Resources, which I will refer to
10 as "the state," filed an application before the commission
11 seeking an order directing Calpine to continue to supply power
12 under California's contract with Calpine.
13         On December 20th, Calpine Corporation and its
14 affiliated debtors commenced their bankruptcy cases by filing
15 bankruptcy petitions.  Immediately thereafter, on December
16 21st, the next day, Calpine, the debtors, filed motions to
17 reject eight power purchase contracts.  That motion is
18 scheduled for hearing before the bankruptcy court tomorrow
19 pending resolution of the issue before you today.
20         In the rejection motion, Calpine indicates that it
21 would like to reject the power purchase contracts so it may
22 sell the energy otherwise committed to the eight parties,
23 counterparties to the contracts, for a higher rate.  In
24 Calpine's own words, they remain willing and able to commit to
25 sell that power to either the same parties or new parties at a
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

9

614rsoum
1  higher price.  In fact, in their moving papers, Calpine
2  indicates that there will not be a disruption in the
3  electricity supply because the energy will remain available.
4  Seen in this light, this case is about attracting a higher
5  rate.
6          Yesterday, the Federal Energy Regulatory Commission
7  issued an order, which they designated an order providing
8  interim guidance, in which the commission indicated that --
9          THE COURT:  Does that have any legal significance?
10 What does that mean?
11         MR. SHINDERMAN:  Your Honor, we asked that very
12 question amongst ourselves earlier, and the answer is there is
13 none.  There was no proper proceeding, there was no evidentiary
14 hearing, and there was no opportunity to be heard.
15         THE COURT:  Was there an application made by you on
16 the 19th of December or one of your number?
17         MR. SHINDERMAN:  Yes, your Honor.  An application was
18 made by the State of California, the California Department of
19 Water Resources, on the 19th.  On the 20th, when the bankruptcy
20 case was commenced --
21         THE COURT:  Nothing happened at FERC as a result of
22 that application, is that correct?
23         MR. SHINDERMAN:  That's correct.
24         THE COURT:  The next day they filed the bankruptcy?
25         MR. SHINDERMAN:  That's correct.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

10

614rsoum
1          THE COURT:  And the following day they applied for the
2  TRO?
3          MR. SHINDERMAN:  That's correct, your Honor.
                        Page 5

614rsoum.txt

```
 4              THE COURT:  Let me ask you a question.  I don't mean
 5    to knock you off stride.  Do you believe this Court has the
 6    power to strike down the TRO that the bankruptcy court has
 7    issued?
 8              MR. SHINDERMAN:  Your Honor, I believe this Court has
 9    the power to withdraw the reference to both this pending
10    motion --
11              THE COURT:  Withdraw the reference, that is a separate
12    question.  Short of withdrawing the reference, does this Court
13    have the power?
14              MR. SHINDERMAN:  I have not briefed the issue, your
15    Honor, but I do not believe that the Court, sitting in its
16    appellate capacity, which that would be, has the power to
17    reverse a TRO.  A preliminary injunction --
18              THE COURT:  If we were to suspend the reference, then
19    of course we could deal with it, is that correct?
20              MR. SHINDERMAN:  That is correct, your Honor.
21              THE COURT:  Would it be your intention to go back to
22    the FERC if the reference was suspended?
23              MR. SHINDERMAN:  Absolutely, your Honor.  In fact, one
24    of the issues we have is that most of the parties that are
25    appearing before you today as movants never had an opportunity
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

614rsoum

```
 1    to make any submission to the commission precisely because the
 2    automatic stay precluded them from doing so, and then the TRO
 3    prevented them from proceeding any further.  That is precisely
 4    one of the implications of the motion to withdraw the
 5    reference.  That is how we propose to proceed, in part.
 6              THE COURT:  Have any of you ever seen such a letter as
 7    the FERC issued yesterday?
 8              MR. SHINDERMAN:  Your Honor, just by an informal poll
 9    of counsel in the last two hours, since we got together, we
10    have not.  This is an order providing guidance.  We have seen
11    decisions of FERC, we have seen rulings from FERC, but we have
12    not seen an order providing guidance.
13              THE COURT:  It was kind of interesting that they
14    thought that they could tell the district court what their
15    jurisdiction was.  That kind of interested me.  Nonetheless, go
16    on.
17              MR. SHINDERMAN:  Your Honor, we thought it was
18    interesting for other reasons as well.  In that order providing
19    interim guidance, the commission stated three things:
20              (1) that the bankruptcy court here should consider the
21    public interest in deciding whether Calpine may reject these
22    eight power purchase contracts;
23              (2) that the commission should be given an opportunity
24    to solicit comments about that public interest; and
25              (3) that the commission should be given an opportunity
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

614rsoum

```
 1    to present its conclusions about the public interest to the
 2    bankruptcy court.
 3              Far from clarifying the issues in the underlying
 4    matter before you today, the FERC's guidance underscores why
 5    withdrawal of the reference is mandatory.
 6              To address the two questions that I posed at the
 7    outset, what forum should ultimately decide the rejection
 8    motion and what standard should be applied, a court must
```

Page 6

614rsoum.txt

```
 9    necessarily consider two competing statutory frameworks, the
10    bankruptcy code and the federal Power Act.
11         Bankruptcy Code Section 365 provides that a debtor may
12    reject an executory contract.  According to the debtor,
13    Calpine, in their briefs before the bankruptcy court, the
14    standard to be applied in their rejection decision is the
15    business judgment of the debtor.  Public interest need not be
16    considered, external factors need not be considered, the input
17    of the commission need not be considered.  The only thing that
18    is relevant, according to the debtors, in reliance on Orion
19    Pictures and other cases, is that the business judgment of the
20    debtor had been properly exercised.
21         The Federal Power Act, however, has a different scheme
22    for resolving disputes such as this.  Calpine entered in the
23    contracts at issue, the eight purchases power contracts,
24    pursuant to its market-based tariffs it filed with the
25    commission.  As such, the contracts, together with Calpine's
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

614rsoum

```
 1    market-based rate authorization, constitute filed rates.
 2         Under the Federal Power Act Sections 201, 205, and
 3    206, filed rates are the subject of the commission's plenary
 4    and exclusive jurisdiction.  Under Section 205 the commission
 5    alone has the power to prescribe rules and regulations under
 6    which rates may be administered and modified.  Likewise, under
 7    the filed rate doctrine announced by the Supreme Court,
 8    wholesale power sales agreements under the commission's
 9    jurisdiction are not mere contract; they can be changed only by
10    the commission, in accordance with Sections 205 and 206 of the
11    Federal Power Act.  Likewise, an agreement subject to the
12    commission's jurisdiction must be respected by the courts.  A
13    collateral attack on such agreement is prohibited.  The
14    decision of the commission may only be reviewed by the circuit
15    court.
16         This is an important statutory scheme.  Section 1 of
17    the Federal Power Act says the commission's jurisdiction exists
18    to protect consumers, who are typically not the parties, the
19    counterparties, to such agreements.  That stands in marked
20    contrast to the bankruptcy code, where the debtor, in an
21    attempt to maximize its estate, looks to its business judgment,
22    what benefits the estate only, not the public interest.
23         Your Honor, the decision of FERC, the guidance
24    provided, is troubling for a number of reasons.  It starts with
25    the assumption that the Mirant case under the Fifth Circuit is
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

614rsoum

```
 1    binding on it.  It is not.  As the debtor in its opposition
 2    papers points out, Mirant not is the law of this circuit.
 3    According to the debtor, the only standard that is relevant is
 4    the debtor's business judgment.
 5         In FERC's guidance, FERC says the public interest must
 6    be considered and that the commission must be afforded an
 7    opportunity to both consider that public interest and present
 8    it to the bankruptcy court.  Again, the debtor here says under
 9    the bankruptcy code that that, too, is irrelevant.
10         The other interesting issue here is the factual
11    position in which we find ourselves.  In the Fifth Circuit the
12    Mirant court said, and the debtor Mirant conceded, that if the
13    action to reject the contract was solely about changing the
```

Page 7

614rsoum.txt

14 filed rights, then indeed the commission would have exclusive
15 jurisdiction.
16       Here, the commission did not have any factual record.
17 The factual record adduced by the affidavit of Mr. Pizzoli was
18 appended to the debtor's motion to reject the contract.  In
19 other words, the only facts in this case of what the debtor's
20 inventions are were first presented to the bankruptcy court and
21 have never been before the commission.
22       But in his affidavit Mr. Pizzoli indicates, as I
23 mentioned at the outset, that Calpine remains ready, willing,
24 and able to sell power, just at a higher price.  In Mirant, in
25 contrast, the debtor had committed to purchase energy from

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

614rsoum
1 other parties and then overcommitted.  It didn't need all the
2 energy it was under contract to purchase.  It wasn't about
3 renegotiating a filed rate.  It was about freeing itself from a
4 contract that was no longer necessary.  Here, in contrast,
5 Calpine says it remains ready, willing, and able to sell the
6 power into the marketplace.
7       Your Honor, also of interest, in the Mirant case the
8 district court did withdraw a motion of the reference to the
9 bankruptcy court, both the motion to reject the contract and a
10 related adversary action.  Although the Fifth Circuit reversed
11 the district court's ruling on certain points, the Fifth
12 Circuit did not rule that withdrawal of the reference was
13 inappropriate.
14       Finally, your Honor, this Court, in its NRG decision,
15 found that indeed the commission, the Federal Energy Regulatory
16 Commission, has exclusive jurisdiction over attempts to change,
17 modify, or alter rates that are on file and subject to the
18 commission's jurisdiction.
19       Where that leaves us, your Honor -- consistent with my
20 promise to keep this to seven minutes -- we have two issues
21 that a court needs to decide:  What forum must make the
22 decision on the rejection motion, and what standard:  Public
23 interest, business judgment, how do we administer the public
24 interest, how does it get heard?  Those two issues must be
25 resolved.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

614rsoum
1       To resolve those two issues, a court must necessarily
2 consider both the Federal Power Act and the bankruptcy code,
3 because the presence and interplay of those two statutes, the
4 bankruptcy code and nonbankruptcy federal law 28 U. S.C.
5 Section 157(d), mandates withdrawal of the reference.
6       Finally, your Honor, I would note that in the
7 alternative, and as noted in the papers, permissive withdrawal
8 of the reference would also be appropriate to the extent that
9 the parties need guidance on what the applicable standard is.
10 The bankruptcy court, according to the debtor's papers, should
11 only apply the business judgment.  FERC's guidance, rulings
12 from other jurisdictions, rulings from this court, suggest that
13 FERC has a role, if not an exclusive role.  So fashioning a
14 standard at the very least is required.
15       For those reasons, your Honor, Southern California
16 Edison respectfully requests that the Court withdraw reference
17 of the motion.
18       THE COURT:  I take it, bottom line, that what you are
Page 8

614rsoum.txt

19  suggesting is the actions of your opponents are an attempt to
20  pull an end run.
21          MR. SHINDERMAN:  Your Honor, without casting
22  aspersions, I would suggest that the filing --
23          THE COURT:  We use such fundamental language here in
24  New York.  We are getting ready for a playoff game.  We have to
25  get down and dirty here.  I think you folks from Washington

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

614rsoum

1   have some sort of a contest in the South someplace.  "The game"
2   is here.  With that said, I believe you in kinder words are
3   suggesting that is the course here.
4           MR. SHINDERMAN:  Your Honor, we believe that the
5   timing of the bankruptcy petition was influenced in part by the
6   submission of the state to the commission trying to seek, in
7   effect, a ruling that no matter what happens in the future, the
8   debtor must continue to supply power to the state of
9   California.
10          THE COURT:  Certainly the time line is interesting.
11  OK.  I will try and help everybody stick to their schedules.
12  Who is next?
13          MR. CUNNINGHAM:  Judge, this Keith Cunningham for the
14  Department of Water Resources --
15          THE COURT:  Yes, sir.
16          MR. CUNNINGHAM:  -- and California Electricity
17  Oversight Board.  I will try to keep my remarks brief and focus
18  on the second issue that we believe requires consideration of
19  nonbankruptcy federal law, that being the standard of review if
20  the jurisdiction question comes out that the bankruptcy court
21  has some role to play in rejection of a FERC jurisdictional
22  power contract.
23          To do that, if the Court would like, I would like to
24  spend a few moments briefly outlining the history of the energy
25  crisis and how the Department of Water Resources contract came

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

614rsoum

1   to be and the important provisions that were included within
2   that contract to address issues that arose during the energy
3   crisis.
4           THE COURT:  It is still included in your time limit,
5   to give you a slight history of this.
6           MR. CUNNINGHAM:  As I said, I will keep it brief with
7   that in mind.
8           The California energy crisis was precipitated by a
9   sudden and extraordinary increase in the level of prices in
10  2000-2001 for power purchased in California spot electricity
11  markets.  At the time of crisis, California's utilities, such
12  as Southern California Edison and Pacific Gas & Electric, were
13  required to purchase their entire supply of power on the spot
14  market.
15          The extraordinarily high prices in the spot market,
16  combined with the inability of investor-owned utilities to
17  recover the difference between the price of the spot market
18  power and the price they were entitled to recover from the rate
19  payers, ultimately caused Southern California Edison and
20  Pacific Gas & Electric to be unable to purchase the power they
21  needed to keep the lights on in California.
22          In response, the California legislature and the
23  governor signed into law emergency legislation that authorized

Page 9

614rsoum.txt
24    the Department of Water Resources to step into the breach and
25    purchase power, including to purchase power under long-term
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

                                                                    19
      614rsoum
1     power purchase agreements.  Long-term contracts entered into by
2     the Department of Water Resources were entered into to reduce
3     the state's reliance on the spot market by assuring a reliable
4     supply of electricity for California's retail end use
5     customers.
6            One of the contracts that was entered into during this
7     time was the original version of the contract that is before
8     the Court in Calpine's motion to reject.  That contract was
9     subsequently renegotiated after multiple parties in the state
10    of California, including the California Attorney General and
11    the Electricity Oversight Board, initiated actions both before
12    FERC and in state court seeking to recover on claims that arose
13    out of the energy crisis in the market manipulation that has
14    been so widely reported in the media.
15           Those claims included a request by the Electricity
16    Oversight Board and FERC to rescind the long-term contracts
17    entered into by the Department of Water Resources as well as
18    claims for refunds for excessive prices charged during that
19    time period by the sellers.
20           To its credit, Calpine was the first seller to step to
21    the table and to renegotiate its long-term contract as part of
22    a global settlement to settle those claims.  In consideration
23    for the releases that it gained from the state parties, it
24    agreed to enter into the contract that is now before the Court
25    on the motion to reject by Calpine.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

                                                                    20
      614rsoum
1            That contract is not a plain vanilla power purchase
2     agreement.  It has several unique features that were inserted
3     into the contract specifically for the purpose of addressing
4     the shortcomings of the California market.
5            First, and most notably, there is a special condition
6     called special condition 3.  That condition requires Calpine to
7     deliver 1,000 megawatts of power into California from
8     generation Calpine owns outside of California in periods of
9     moderate to high demand.  Special condition 3 requires Calpine
10    to deliver power to sellers not just in the market but from
11    Calpine's western generation assets when the supply is tight.
12           Third, when the supply is tight, as specified in the
13    contract, it requires Calpine to bid unutilized power from its
14    western generation assets into the California spot market at
15    just and reasonable rates.  Nothing in California law would
16    require Calpine to meet these obligations with respect to
17    generation outside the California.  These are strictly
18    contractual provisions to make sure that during tight supply
19    conditions Calpine would run its western generation assets and
20    deliver power into California rather than another western
21    state.
22           A second unique feature in this contract is special
23    condition 4.  That provision addresses the lack of generation
24    capacity in the state of California.  It commits Calpine to a
25    schedule to build new generation in California and gives the
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

                                                                    21
                                Page 10

614rsoum.txt
614rsoum
1  Department of Water Resources the ability to take over or step
2  into the shoes of Calpine to finish those projects if Calpine
3  fails to meet certain defined benchmarks that are set forth in
4  the contract.
5          In short, these provisions are all geared to
6  addressing the shortcomings of the California market during
7  energy crisis:  Lack of capacity and the overreliance on the
8  spot market.
9          Now Calpine is coming before the bankruptcy court
10 seeking to reject this contract, and they are saying,
11 notwithstanding our own admission before FERC recently and the
12 FERC filing, that the Mobil-Sierra public interest standard of
13 review governs this particular contract; notwithstanding the
14 Federal Power Act, we can reject this contract even though
15 California needs the power that we are providing under this
16 contract.
17         It is not just the power itself, because Calpine has
18 said to the court that we will continue to provide that power.
19 It is the fact that these unique provisions commit Calpine to
20 providing that power into the California market from western
21 generation assets that are outside of California.
22         The Federal Power Act necessarily must be reviewed by
23 this Court to determine what standard applies to Calpine's
24 attempt to cease performance under the Calpine contract with
25 the Department of Water Resources.  Congress has seen fit in
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                          22
614rsoum
1  the Federal Power Act to give FERC exclusive jurisdiction over
2  the sale of electric energy at wholesale in interstate commerce
3  and authority to pass upon any changes that are proposed in the
4  rate charged classification or services provided for in a
5  wholesale power purchase agreement.
6          Resolution of the issues in this case necessarily
7  requires substantial and material consideration of the Federal
8  Power Act and the many Supreme Court and other decisions
9  interpreting the Federal Power Act to give effect to those
10 provisions with respect to rates, terms, conditions, and
11 changes thereto.  For these reasons, we believe that the
12 reference should be withdrawn and that these important issues
13 should be decided by a district court.
14         THE COURT:  Thank you, sir.
15         Who is next?
16         MS. COFFINO:  Diane Coffino, your Honor, on behalf of
17 Pacific Gas & Electric Company.  I just want to hit on a couple
18 of points.  I will try not to duplicate.
19         The first point is that this hearing is about a motion
20 to withdraw the reference.  In deciding that, you have to
21 decide a couple of issues.  That is, whether resolution of the
22 rejection motion requires substantial and material
23 consideration of nonbankruptcy federal law.
24         We submit that it does, because this Court, in order
25 to decide the rejection motion, has to determine what the
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                          23
614rsoum
1  intersection of the jurisdiction of the bankruptcy court under
2  the bankruptcy code, how that intersects with jurisdiction of
3  the commission under the Federal Power Act and, depending on
4  how that decision comes out, what the standard is to be applied
                        Page 11

614rsoum.txt

5   to a rejection or a request to cease performance under an
6   energy contract.
7           A lot of the debtor's arguments in the papers it filed
8   today, this afternoon, really go to the merits.  They argue
9   that under the merits the commission has no jurisdiction.  That
10  is not what is before the Court.  We have a view about that.
11  If given the opportunity, we will present that view to you.
12  But that is not what is before the Court today.
13          As you are aware, case decisions are driven by facts.
14  As some of the co-movants have pointed out, the Mirant court
15  facts were very different from the facts presented here.  It is
16  not how the debtors describe the Mirant court case in their
17  papers.  But even if Mirant were controlling here, and even the
18  debtor's acknowledge that it is not when they attempted to
19  disavow the Mirant case for the public interest standard, I
20  think that the decision here would come out the same whether
21  you applied the reasoning in NRG or under the Mirant standard.
22          Under Mirant, the Fifth Circuit made clear that the
23  Federal Power Act does preempt a breach of contract claim when
24  that breach of contract claim is motivated by a change in rates
25  or a desire for a change in rates.  If there is some other
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                24
614rsoum
1   rationale, such as there was in Mirant where there was an
2   oversupply and the contract wasn't needed at all at any price,
3   that is different.  But that is not what our case is.
4           The debtor's arguments on the public interest standard
5   are equally unconvincing.  They argue that the fact that Mirant
6   held that the public interest standard shall apply and that
7   FERC urges the same result, that a public interest standard
8   must be considered here, does not present a conflict but in the
9   Second Circuit it is the business judgment rule.
10          Your Honor, that begs the question.  You have to
11  answer that question.  And in order to do that, you have to
12  consider the Federal Power Act and its implications on a
13  debtor's request to reject.  That is grounds for mandatory
14  withdrawal of the reference.
15          In the end, one thing is clear.  The Mirant court and
16  this court in the Enron case, Cal PX Enron case, said that
17  withdrawal under these circumstances was mandated.  The fact
18  that the jurisdictional question ultimately was answered
19  differently by the Fifth Circuit does not in any way alter the
20  propriety of the district court's decision to pull up the case
21  and withdraw the reference.  In fact, when the Fifth Circuit
22  remanded, it remanded to the district court.
23          In the end, your Honor, we submit that the reference
24  should be withdrawn and we urge you to do that today, because
25  of the pendency of the hearing tomorrow before the bankruptcy
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                25
614rsoum
1   court.  Thank you.
2           THE COURT:  Thank you so much, ma'am.
3           MR. POWELL:  Good afternoon, your Honor.  Jeff Powell
4   on behalf of the debtors.  I want to start with the question
5   your Honor asked, which is, is the reason that the debtors
6   filed for bankruptcy due to the filing of the California
7   parties' complaint before FERC?  The answer is absolutely not.
8   Absolutely not.
9           I think everybody agrees, your Honor, that the test
                           Page 12

614rsoum.txt
10    here for withdrawal is whether --
11              THE COURT:  The timing is interesting, don't you
12    think?
13              MR. POWELL:  As your Honor may know, it is not part of
14    the record, but there was litigation in Delaware chancery court
15    as to ownership of certain assets of the company.  It was that
16    litigation and the chancery court's ruling, and I think the
17    appellate court's ruling, that dictated this filing.
18              THE COURT:  When did that litigation take place?
19              MR. POWELL:  The first two weeks in December, I
20    believe.  That is what drove this filing, your Honor, not the
21    fact that the California parties filed a complaint before FERC
22    one day before we filed for Chapter 11.  A bankruptcy filing of
23    this size cannot be turned around and done on a dime just
24    because one of these parties filed before FERC the day before.
25    So I want to correct any misimpression there might have been
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    26
      614rsoum
1     earlier.
2               The test, I think we all agree, for mandatory
3     withdrawal is whether there is a material and substantial
4     conflict between the bankruptcy code and other, nonbankruptcy
5     federal laws.  I would submit, with respect to both issues
6     raised by the movants, there is no such conflict.
7               With respect to the FERC jurisdiction issue, the FERC
8     itself made very clear yesterday that there is no conflict
9     between the Federal Power Act and the bankruptcy code.  I
10    strongly disagree with the statement earlier that that order
11    has no significance whatsoever.  That order was a statement of
12    the FERC's position here.
13              THE COURT:  Have you ever seen one before?
14              MR. POWELL:  No, sir.  I am not an energy lawyer
15    though.
16              THE COURT:  Neither am I.
17              MR. POWELL:  That order was a statement of FERC's
18    position.  It was also, your Honor, a statement of FERC's
19    intentions.  In that order, FERC made very clear that it has no
20    intent to act here.  It discussed the Mirant Fifth Circuit case
21    at length.  It said that it was going to follow that authority
22    and said that it would not act here, that it would not supplant
23    the bankruptcy court's authority to authorize the rejection of
24    an energy contract.
25              THE COURT:  But they offered to shape the factual
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    27
      614rsoum
1     record to the court, did they not?
2               MR. POWELL:  Yes, sir, with respect to the rejection
3     standard.
4               THE COURT:  Rather than doing it themselves, but they
5     would shape it.
6               MR. POWELL:  They indicated they were going to receive
7     submissions from interested parties and then make a submission
8     to the bankruptcy court as to the standard of rejection, which
9     I want to get to.
10              With respect to the jurisdictional issue itself, FERC
11    made very clear that it was adopting the holding in Mirant that
12    the Federal Power Act does not preempt section 365, and the
13    reason is because rejection does not impact the filed rate.
14    These parties may have claims for damages, but, as Mirant made
                              Page 13

614rsoum.txt
```
15    very clear and as the FERC order yesterday cited, those damage
16    calculations will be based on the filed rate.  That, your
17    Honor, is a statement of the FERC's position with respect to
18    jurisdiction.  I would submit that that should be dispositive.
19            In addition, the Mirant Fifth Circuit decision should
20    also be dispositive.
21            THE COURT:  Why should they offer to put together a
22    factual record for the bankruptcy court if it is a simple
23    bankruptcy question and does not conflict with the federal
24    power laws?
25            MR. POWELL:  With respect to the federal rejection
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

614rsoum
```
 1    standard, your Honor?
 2            THE COURT:  Yes.  Why should they offer to do that if
 3    this is a simple bankruptcy question?
 4            MR. POWELL:  I can't speak for the FERC's intentions
 5    with respect to this order.  I do think that the FERC --
 6            THE COURT:  If their papers come into this mix, I
 7    think you ought to address it in any case.
 8            MR. POWELL:  I will, your Honor.
 9            THE COURT:  It seems interesting that they want to
10    shape your conclusion for you but they don't want to step up to
11    the plate and make it.
12            MR. POWELL:  With respect to jurisdiction, they do not
13    want to step up to the plate.  They do not want to supplant the
14    Court's authority.
15            THE COURT:  They tell the Court what their authority
16    is, do they not?
17            MR. POWELL:  What their, FERC's, authority is?
18            THE COURT:  No.  What the Court's authority is.
19            MR. POWELL:  Yes, that is true, your Honor, they did.
20    They referred to the Mirant decision, and then they indicated
21    what they planned to do with respect to jurisdiction.
22            THE COURT:  I think they go a little further than
23    that, sir.
24            MR. POWELL:  I will say, your Honor, that when we
25    sought and obtained the TRO from Judge Lifland, that TRO is
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

614rsoum
```
 1    still in place.  There was a preliminary junction hearing
 2    scheduled for days later, and the FERC, through the U.S.
 3    Attorney's office, has agreed to keep that in place through
 4    February 15th, knowing, your Honor, that the rejection hearing
 5    was set for tomorrow.
 6            I want to talk about the rejection standard, the
 7    standard of rejection, which is the second grounds for the
 8    movants' motions to withdraw.  You are correct that the FERC
 9    order yesterday did weigh in on that issue.  Let me say a
10    couple of things about that.
11            First of all, the movants here, as grounds for
12    withdrawal, one of the reasons they would like your Honor to
13    withdraw the reference is they would like the Mobil-Sierra
14    standard to be applied to a rejection hearing.  First, movants
15    cite not one case that has ever applied that standard to a
16    rejection hearing, not one case.
17            Further, in yesterday's order, FERC itself made clear
18    that it did not believe the Mobil-Sierra standard applied to
19    rejection proceedings, because there is a difference between
```
                            Page 14

614rsoum.txt
```
20   rejection and termination, as they made clear in their order.
21   With respect to the Mobil-Sierra standard, FERC doesn't think
22   it applies, no cases have applied it, and therefore there is no
23   conflict between the bankruptcy code and nonbankruptcy federal
24   law.
25              FERC's order yesterday also discusses the rejection
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30
614rsoum
```
 1   standard adopted by the district court in Mirant.  That
 2   standard is currently on appeal before the Fifth Circuit.  More
 3   important, your Honor, that is not a conflict between the
 4   bankruptcy code and other federal laws warranting withdrawal.
 5   At most, your Honor, that is a conflict between the law of this
 6   circuit and the law of the Fifth Circuit.  That is not the kind
 7   of conflict that satisfies Section 157(d).
 8              In that respect, your Honor, that is why the FERC
 9   statement of position with respect to the standard yesterday is
10   critical.  No one, and movants don't cite any case to the
11   contrary, has argued that Mobil-Sierra applies to rejection.
12              With respect to the Mirant v. Orion issue -- by the
13   way, Orion was applied to energy contracts in the NRG Energy
14   case -- with respect to that issue, at most that is a conflict
15   between circuits.  The fact that the movants here would like to
16   make new law in this circuit is not grounds for withdrawal
17   under 157(d).  That is why, your Honor, I believe that the
18   FERC's action yesterday also demonstrates why withdrawal of
19   reference with respect to the determination of the rejection
20   standard also supports denial of that motion.
21              One other thing I want to address.  The movants, in
22   their papers and in argument this afternoon, referred to the
23   district court's withdrawal of reference in Mirant.  That is
24   the only case that movants have cited in which a district court
25   has withdrawn reference with respect to this issue.  Notably,
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

31
614rsoum
```
 1   the Fifth Circuit reversed the district court's decision and,
 2   in reversing that decision as to jurisdiction, completely
 3   eviscerated the basis for the district court's withdrawal of
 4   reference to begin with.
 5              Mirant made very clear, after a detailed analysis,
 6   that there is no exemption under section 365 for energy
 7   contracts regulated by the FERC and there was no conflict
 8   between the bankruptcy code and the Federal Power Act, and that
 9   the Federal Power Act does not preempt the bankruptcy court's
10   jurisdiction here, because rejection does not impact the filed
11   rate.
12              For both of those reasons, your Honor -- that there is
13   no conflict with respect to jurisdiction here and that there is
14   no conflict with respect to the standard of rejection -- we
15   request that your Honor deny the motions to withdraw.
16              THE COURT:  Thank you, sir.
17              Does anybody need any time to reply?
18              MR. LUSKIN:  Your Honor, Michael Luskin.  I just
19   wanted to make one technical point.  The Attorney General of
20   the State of California joins the positions made by Mr.
21   Cunningham on behalf of the water resources department and the
22   Electricity Oversight Board.  We have nothing further to add to
23   his argument.
24              MR. SHINDERMAN:  Your Honor, Mark Shinderman of Munger
```
Page 15

614rsoum.txt

25    Tolles & Olson again.  Your Honor, if I may be afforded three
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

32

614rsoum
1     minutes to respond to the points raised by Calpine?
2             THE COURT:  If you stick to that.
3             MR. SHINDERMAN:  Thank you, your Honor.  There are
4     seven specific points which I wish to handle.  The first is
5     that resolution of the rejection motion requires in the first
6     instance a determination of what court and what standard should
7     be applied.  To answer those two questions, this Court must
8     necessarily consider both the Federal Power Act and the
9     bankruptcy code.  So just to answer the predicate question
10    requires the consideration of bankruptcy law and federal
11    nonbankruptcy law such that withdrawal of the reference is
12    mandatory under 28 U.S.C. 157(d).
13            Second, the debtor would ignore the public interest in
14    this case, but the debtor hasn't told you what was implied in
15    the papers, which is that if the debtor is free to reject these
16    contracts and then sell the same power into the marketplace it
17    is already selling to the same parties in the marketplace,
18    ultimately the consumers, the public interest, will have to pay
19    more money.  That is why the commission said the public
20    interest is relevant.
21            The third point I would like to make is the reason for
22    debtor's filing.  As your Honor stated, the time of the filing
23    was curious.  Your Honor, according to information that is
24    publicly available, this company, the debtor, Calpine, had
25    until January 22nd to pay back the money.  So we think, as I
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

614rsoum
1     stated before, that certainly the presence of the California
2     application to the commission certainly influenced the timing
3     of the bankruptcy petition.  And I would note that on the first
4     day of the bankruptcy case, the debtor, on an ex parte basis,
5     obtained a temporary restraining order against the commission
6     from proceeding.
7             The fourth issue touched upon by the debtor is what
8     significance should be afforded the guidance.  On the one hand,
9     the debtor says the guidance is very important because in the
10    guidance the commission is abdicating -- I shouldn't say
11    abdicating -- is willing to let the bankruptcy court proceed to
12    a decision.  But at the same time, the debtor turns around and
13    says, but the conditions under which the commission wants to do
14    that, to provide an opportunity for the public to be heard and
15    for the commission to weigh in on that public interest, the
16    debtor rejects.
17            On the one hand, the debtor would have adopted the
18    guidance as being informative and influential because it
19    informs deference to the bankruptcy court.  On the other hand,
20    the predicate to the deference, that the commission be allowed
21    an opportunity to protect the public interest consistent with
22    the Federal Power Act, should be ignored.
23            Your Honor, as we point out in the guidance, Mirant is
24    not the standard adopted by any court in this circuit.  The
25    commission starts with the proposition that it is bound and
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

34

614rsoum

Page 16

614rsoum.txt
```
 1  therefore should follow Mirant.  Second, Mirant also stands for
 2  the proposition that if what the debtor is trying to do is
 3  abrogate its contract so it can charge a higher rate, as is the
 4  case here, then the commission's jurisdiction is exclusive.
 5  The Fifth Circuit opinion contains the concession of Mirant
 6  that if it was just about abrogating rates so it could charge a
 7  different price or pay a different price, then the commission's
 8  jurisdiction would be absolute.
 9          The debtor also established a fifth point, that there
10  is no authority for the proposition that the Mobil-Sierra
11  standard should be applied to rejection of an executory
12  contract.  The answer to that is very simple.  When that issue
13  was brought before this Court previously, this Court said, we
14  have to defer to the absolute jurisdiction of the commission.
15          So you won't see any opinions that say the
16  Mobil-Sierra standard should be applied to a bankruptcy court's
17  decision to reject an executory contract for the purchase of
18  power, because in any situation that that would have arisen,
19  reference was withdrawn and/or the court paid deference to the
20  exclusive jurisdiction of the commission.
21          Two more points.  Curiously, absent from the debtor's
22  position is any adoption of the standard or the interest that
23  the commission believes it is bound to protect under its
24  jurisdiction.
25          Finally, I would note one issue that this Court would
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                    35
614rsoum
```
 1  have to consider as a predicate to moving forward is whether or
 2  not the commission has the power to relinquish the jurisdiction
 3  which this Court and others and the commission in prior cases
 4  has said is absolute.  It is an issue that requires resolution.
 5          Finally, the your Honor, the debtor ended its
 6  presentation by stating that there was only one authority for
 7  the proposition that in considering motions to reject purchase
 8  power contracts, a reference must be withdrawn.  That is the
 9  Mirant case.  Conversely, the debtor doesn't point to any case
10  where a motion to withdraw the reference was denied.
11          Furthermore, the only reason one could characterize
12  the Fifth Circuit as eviscerating standards for withdrawal of
13  the reference in the future is because the Fifth Circuit has
14  set forth the standard that should guide all future courts
15  within the Fifth Circuit in the rejection decision, a
16  modification of what would otherwise be applied by the debtor
17  in the bankruptcy court in this case.
18          So, your Honor, wrapping this all up and bringing it
19  back to the beginning, the predicate to the rejection motion is
20  what forum and what standard gets applied.  To resolve those
21  two questions, a court must necessary consider the interplay
22  between the bankruptcy code and the Federal Power Act such that
23  withdrawal of the reference is mandatory.
24          MR. POWELL:  Your Honor, Jeff Powell for the debtors.
25  May I be heard?
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                    36
614rsoum
```
 1          THE COURT:  Briefly.
 2          MR. POWELL:  Briefly, yes, sir.  Three quick points.
 3          The grounds for the movants' withdrawal motion is that
 4  there is a conflict.  The FERC spoke yesterday and made it
 5  clear that they do not have jurisdiction to get involved in the
                              Page 17
```

614rsoum.txt
```
 6    rejection issue and that there is no conflict.  The FERC has
 7    spoken here and indicated its intentions:  Namely, it does not
 8    intend to act.  That should resolve the jurisdiction argument,
 9    the claimed conflict, raised by these parties.  That is point
10    one.
11              Point two is the FERC did not abdicate its
12    jurisdiction, your Honor, not even close to it.  The FERC said
13    it did not have jurisdiction.  It did not abdicate something
14    that it made clear it does not have.
15              Third, several of the attorneys here have talked about
16    supply considerations and perhaps rate considerations.
17              THE COURT:  Does the Court have the power to tell the
18    FERC what their jurisdiction is, as opposed to FERC attempting
19    to tell the Court what their jurisdiction is?
20              MR. POWELL:  I'm sorry.  Could you repeat that?
21              THE COURT:  Does the Court have the power to tell the
22    FERC what their jurisdiction is, as opposed to the FERC
23    attempting, as they did in their letter, to tell the Court what
24    their jurisdiction is?
25              MR. POWELL:  I don't believe that the Court, or the
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              37
      614rsoum
```
 1    movants by a withdrawal motion, have the power to force the
 2    FERC to get involved in this decision.
 3              THE COURT:  That wasn't the question.
 4              MR. POWELL:  I must have misunderstood your question,
 5    your Honor.
 6              THE COURT:  Does the Court have the power to tell the
 7    FERC what their jurisdiction is?
 8              MR. POWELL:  No, sir.
 9              THE COURT:  Who does?
10              MR. POWELL:  Who does?  I believe the FERC does and
11    the --
12              THE COURT:  FERC decides their own jurisdiction?
13              MR. POWELL:  And of course the courts of appeals, your
14    Honor, under the regulatory framework.
15              The third point is that these claims of concern about
16    supply and rate considerations, your Honor, were made in the
17    complaint to the FERC.  The FERC was aware of those concerns
18    before it issued its order yesterday.  More important, and
19    last, those concerns have nothing to do with the issue before
20    your Honor, which is Section 157 withdrawal.  If movants wish
21    to make those arguments, they can make those arguments where
22    they should make them, which is before the bankruptcy court,
23    your Honor.
24              Thank you.
25              THE COURT:  What time is the hearing tomorrow morning
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              38
      614rsoum
```
 1    before the bankruptcy court?  Is it morning?  What time
 2    tomorrow?
 3              MR. POWELL:  Yes, sir.  10 a.m.
 4              THE COURT:  We will take a brief recess.  Then I will
 5    inform you whether I will decide the motion right now or I will
 6    issue an opinion by tomorrow morning in time for your hearing
 7    before the bankruptcy court.  If you will indulge us for a few
 8    minutes, I will come back and tell you when it will issue.
 9              (Recess)
10              THE COURT:  Counsel, I have considered your oral
```
                              Page 18

614rsoum.txt
11  arguments carefully.  The Court has reviewed your papers.  We
12  are prepared to give you a decision now.
13          The issues involved in this case are complex and
14  involve the delicate separation of powers in the United States.
15  Resolution of the underlying rejection motion requires
16  substantial and material consideration of the interaction of
17  federal law and bankruptcy law that require significant
18  interpretation, including but not limited to what forum has the
19  authority to reject FERC-related wholesale energy contracts and
20  whether the business judgment or public interest standard
21  should apply.  As such, the Court must withdraw the reference
22  to the bankruptcy court pursuant to 28 U.S.C. Section 157.
23          The Court finds that neither the Fifth Circuit
24  decision in Mirant nor the FERC's order providing interim
25  guidance resolves the issue.  The former perhaps clarifies the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                39
614rsoum
1   law in the Fifth Circuit, while the latter has no power to
2   dictate the jurisdiction of or standards to be applied in the
3   district court.  This is so notwithstanding the fact that the
4   FERC order seeks to enlarge this Court's jurisdiction or that
5   its recommendation as to the application of the public interest
6   standard may be wise.
7           The separation of powers dictates this Court's
8   decision, and inasmuch, the motion to withdraw the reference as
9   to the motion of the debtors for entry of an order authorizing
10  debtors to reject the energy contracts is granted.
11          Counsel, I believe that concludes our business at
12  hand.  There may be subsequent applications or conferences.
13  After deliberations amongst yourselves, you may consult with my
14  deputy clerk.  Thank you.  Good evening.  Have a safe trip
15  home.  The court will stand in recess.
16          (Adjourned)
17
18
19
20
21
22
23
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300